# LOGAN *v.* ZIMMERMAN BRUSH CO. ET AL.

No. 80–5950.  Argued October 14, 1981—Decided February 24, 1982

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, and STEVENS, JJ., joined. BLACKMUN, J., also filed a separate opinion, in which BRENNAN, MARSHALL, and O'CONNOR, JJ., joined, *post*, p. 438. POWELL, J., filed an opinion concurring in the judgment, in which REHNQUIST, J., joined, *post*, p. 443.

*Gary H. Palm* argued the cause and filed briefs for appellant. *Tyrone C. Fahner*, Attorney General of Illinois, filed a

brief for the Illinois Human Rights Commission et al. as appellees under this Court's Rule 10.4 in support of appellants. With him on the brief were *Paul J. Bargiel* and *Russell C. Grimes, Jr.*, Assistant Attorneys General.

*Jay A. Canel* argued the cause and filed briefs for appellee Zimmerman Brush Co.*

JUSTICE BLACKMUN delivered the opinion of the Court.†

The issue in this case is whether a State may terminate a complainant's cause of action because a state official, for reasons beyond the complainant's control, failed to comply with a statutorily mandated procedure.

## I

### A

The Illinois Fair Employment Practices Act (FEPA or Act), Ill. Rev. Stat., ch. 48, ¶851 *et seq.* (1979), barred employment discrimination on the basis of "physical . . . handicap unrelated to ability." ¶853(a). It also established a comprehensive scheme for adjudicating allegations of discrimination. To begin the process, a complainant had to bring a charge of unlawful conduct before the Illinois Fair Employment Practices Commission (Commission) within 180 days of the occurrence of the allegedly discriminatory act. ¶858(a). The statute—in the provision directly at issue here—then gave the Commission 120 days within which to convene a factfinding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement. ¶858(b). If the Commission found "substantial evidence" of illegal conduct, it was to attempt to "eliminate the effect thereof . . . by means of

---

*James D. Weill* filed a brief for the Congress of Organizations of the Physically Handicapped et al. as *amici curiae* urging reversal.

†JUSTICE O'CONNOR joins only the separate opinion, *post*, p. 438.

conference and conciliation," ¶858(c), and, if that proved impossible, to issue a formal complaint against the employer within 180 days after the expiration of the 120-day period. ¶858(d). A formal adversary hearing was then to be held before a commissioner or duly appointed adjudicator, who was to make findings and who was empowered to recommend reinstatement, backpay, and reasonable attorney's fees. ¶858.01. If the commissioner or adjudicator did not find substantial evidence of discrimination, he was to recommend dismissal of the charge. *Ibid.*

The findings and recommended order were to be filed with the Commission. A complainant was entitled to obtain review by the full Commission of any of the possible dispositions of his charge, including an initial determination that the evidence did not justify a complaint. The Commission was to file a written order and decision. ¶858.02; Illinois Fair Employment Practices Commission, Rules and Regulations, §4.5 (1979). If still not satisfied, the complainant could seek judicial review of any Commission order. ¶860.[1]

---

[1] After the inception of the present litigation, the Illinois Legislature repealed the FEPA, and put in its place the more comprehensive Illinois Human Rights Act. 1979 Ill. Laws, P. A. 81–1216, later amended by 1980 Ill. Laws, P. A. 81–1267. The new statute bars discrimination in real estate and financial transactions and in public accommodations, as well as in employment. It replaces the Fair Employment Practices Commission with two agencies: a Department of Human Rights, ¶7–101 *et seq.*, which is given the responsibility for investigating charges and issuing complaints upon a finding of substantial evidence, and a Human Rights Commission, ¶8–101 *et seq.*, which reviews the Department's findings and holds hearings upon issued complaints. The new Act modifies a number of the FEPA's procedural provisions; most important for present purposes, it commits to the Department's *discretion* the decision whether to hold a factfinding conference. ¶7–102(C)(3).

These revisions have no effect on Logan's case, however, for the Illinois Supreme Court has ruled that the Human Rights Act is not to be applied retroactively. *Zimmerman Brush Co.* v. *Fair Employment Practices Comm'n,* 82 Ill. 2d 99, 108–109, 411 N. E. 2d 277, 282–283 (1980).

## B

On November 9, 1979, appellant Laverne L. Logan, a probationary employee hired one month previously, was discharged by appellee Zimmerman Brush Company, purportedly because Logan's short left leg made it impossible for him to perform his duties as a shipping clerk. Five days later, Logan, acting *pro se*, filed a charge with the Commission alleging that his employment had been unlawfully terminated because of his physical handicap. App. 3. This triggered the Commission's statutory obligation under ¶ 858(b) to convene a factfinding conference within 120 days; in Logan's case, this meant by March 13, 1980. Apparently through inadvertence, the Commission's representative scheduled the conference for March 18, five days *after* expiration of the statutory period. Notice of the meeting, which was mailed to both parties in January 1980, specified the hearing's date and location and declared that attendance was "required." It, however, did not allude to the FEPA's 120-day time limit. App. 5. The Commission also asked the company to complete a short questionnaire concerning its employment practices, and directed that it submit its answers by March 10. *Ibid.* The company did this without objection.

When the conference date arrived, the company moved that Logan's charge be dismissed because the Commission had failed to hold the conference within the statutorily mandated 120-day period. *Id.*, at 12. This request was rejected. *Id.*, at 16. The company thereupon petitioned the Supreme Court of Illinois for an original writ of prohibition. That court stayed proceedings on Logan's complaint pending decision on the request for a writ. *Id.*, at 24. Logan meanwhile obtained counsel, and—because 180 days had not yet passed since the occurrence of the allegedly discriminatory act—filed a second charge with the Commission. *Id.*, at 26.

Before the Illinois Supreme Court, Logan argued that terminating his claim because of the Commission's failure to convene a timely conference—a matter beyond Logan's, or in-

deed the company's, control—would violate his federal rights to due process and equal protection of the laws. But the court noted that the statutory provision at issue, ¶ 858(b), declared: "Within 120 days of the proper filing of a charge, the Commission *shall* convene a fact finding conference. . . ." (Emphasis added.) The Illinois court found this legislative language to be mandatory, and accordingly it held that failure to comply deprived the Commission of jurisdiction to consider Logan's charge. *Zimmerman Brush Co.* v. *Fair Employment Practices Comm'n*, 82 Ill. 2d 99, 411 N. E. 2d 277 (1980).

The court found controlling its decision in *Springfield-Sangamon County Regional Planning Comm'n* v. *Fair Employment Practices Comm'n*, 71 Ill. 2d 61, 373 N. E. 2d 1307 (1978),[2] where it had determined that ¶ 858(c)'s 180-day deadline for issuing a complaint was mandatory; since the state legislature wrote ¶ 858(b) after the *Springfield-Sangamon* decision, and used language similar to that employed in ¶ 858(c), it must have intended the 120-day time limit to be jurisdictional as well. This result, reasoned the court, comported with the statute's purposes by facilitating the "just and expeditious resolutions of employment disputes," 82 Ill. 2d, at 107, 411 N. E. 2d, at 282, while protecting employers " 'from unfounded charges of discrimination,' " *id.*, at 106, 411 N. E. 2d, at 281, quoting ¶ 851.

The Illinois Supreme Court summarily rejected Logan's argument that his due process and equal protection rights would be violated were the Commission's error allowed to extinguish his cause of action. The state legislature had established the right to redress for discriminatory employment practices, it was said, and "[t]he legislature could establish reasonable procedures to be followed upon a charge . . . ."

---

[2] See also *Board of Governors* v. *Fair Employment Practices Comm'n*, 78 Ill. 2d 143, 149, 399 N. E. 2d 590, 593 (1979); *Wilson* v. *All-Steel, Inc.*, 87 Ill. 2d 28, 428 N. E. 2d 489 (1981).

*Id.*, at 108, 411 N. E. 2d, at 282. The court then went on to rule that Logan could not file a second charge with the Commission based upon the same act of alleged discrimination, for to allow the second complaint to proceed would circumvent the design of the Act and frustrate the public interest in an expeditious resolution. of disputes.[3] *Id.*, at 108–109, 411 N. E. 2d, at 282–283.

Logan appealed, bringing his federal claims to this Court. We noted probable jurisdiction. 450 U. S. 909 (1981).

## II

### A

Justice Jackson, writing for the Court in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 (1950), observed: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.*, at 313. At the outset, then, we are faced with what has become a familiar two-part inquiry: we must determine whether Logan was deprived of a protected interest, and, if so, what process was his due.

The first question, we believe, was affirmatively settled by the *Mullane* case itself, where the Court held that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause.[4] There, the Court confronted a challenge to a state law that provided for the settle-

---

[3] The Illinois court also refused to give retroactive application to the new Illinois Human Rights Act, which makes the convening of a factfinding conference discretionary. 82 Ill. 2d, at 108–109, 411 N. E. 2d, at 282–283. See n. 1, *supra.*

[4] Two years ago, in *Martinez* v. *California*, 444 U. S. 277, 281–282 (1980), the Court noted that "[a]rguably," a state tort claim is a "species of 'property' protected by the Due Process Clause."

ment of common trust fund accounts by fiduciaries, upon notice given through newspaper publication. The effect of the statute was to terminate "every right which beneficiaries would otherwise have against the trust company . . . for improper management of the common trust fund." *Id.*, at 311. This, the Court concluded, worked to deprive the beneficiaries of property by, among other things, "cut[ting] off their rights to have the trustee answer for negligent or illegal impairments of their interests." *Id.*, at 313. Such a result was impermissible unless constitutionally adequate notice and hearing procedures were established before the settlement process went into effect. *Id.*, at 315. Despite appellee Zimmerman Brush Company's arguments to the contrary, we see no meaningful distinction between the cause of action at issue in *Mullane* and Logan's right to use the FEPA's adjudicatory procedures.

This conclusion is hardly a novel one. The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances. In *Societe Internationale* v. *Rogers*, 357 U. S. 197 (1958), for example—where a plaintiff's claim had been dismissed for failure to comply with a trial court's order—the Court read the "property" component of the Fifth Amendment's Due Process Clause to impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.*, at 209. See also *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 349–351 (1909) (power to enter default judgment); *Hovey* v. *Elliott*, 167 U. S. 409 (1897) (same); *Windsor* v. *McVeigh*, 93 U. S. 274 (1876) (same). Cf. *Wolff* v. *McDonnell*, 418 U. S. 539, 558 (1974). Similarly, the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such

an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." *Boddie* v. *Connecticut*, 401 U. S. 371, 380 (1971).[5]

In any event, the view that Logan's FEPA claim is a constitutionally protected one follows logically from the Court's more recent cases analyzing the nature of a property interest. The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S. 1, 11–12 (1978); *Goss* v. *Lopez*, 419 U. S. 565, 573–574 (1975); *Board of Regents* v. *Roth*, 408 U. S. 564, 576–578 (1972). Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact." *National Mutual Insurance Co.* v. *Tidewater Transfer Co.*, 337 U. S. 582, 646 (1949) (Frankfurter, J., dissenting); *Arnett* v. *Kennedy*, 416 U. S. 134,

[5] The Court's cases involving the right of access to courts provide an analogous method of analysis supporting our reasoning here. In *Boddie*, the Court established that, at least where interests of basic importance are involved, "absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." 401 U. S., at 377. Thus, the State's imposition of substantial filing and other fees upon indigents seeking divorces was held to deny them due process. In *United States* v. *Kras*, 409 U. S. 434 (1973), we agreed that a due process right of access to the courts exists when fundamental interests are present and the State has exclusive control over "the adjustment of [the] legal relationship[s]" involved. *Id.*, at 445. The relationship between these opinions and the right to procedural due process at issue in the instant case is made clear in *Boddie*, which relied in large part on the analysis of *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 (1950), and its guarantee "to all individuals [of] a meaningful opportunity to be heard." *Boddie*, 401 U. S., at 379; see also *id.*, at 377–378, 380, 382. Thus, while the right to seek a divorce may not be a property interest in the same sense as is a tort or a discrimination action, the theories of the cases are not very different: having made access to the courts an entitlement or a necessity, the State may not deprive someone of that access unless the balance of state and private interests favors the government scheme.

207–208, and n. 2 (1974) (MARSHALL, J., dissenting); *Board of Regents* v. *Roth*, 408 U. S., at 571–572, 576–577. See, *e. g.*, *Barry* v. *Barchi*, 443 U. S. 55 (1979) (horse trainer's license protected); *Memphis Light, Gas & Water Div.* v. *Craft, supra* (utility service); *Mathews* v. *Eldridge*, 424 U. S. 319 (1976) (disability benefits); *Goss* v. *Lopez, supra* (high school education); *Connell* v. *Higginbotham*, 403 U. S. 207 (1971) (government employment); *Bell* v. *Burson*, 402 U. S. 535 (1971) (driver's license); *Goldberg* v. *Kelly*, 397 U. S. 254 (1970) (welfare benefits).

The right to use the FEPA's adjudicatory procedures shares these characteristics. A claimant has more than an abstract desire or interest in redressing his grievance: his right to redress is guaranteed by the State, with the adequacy of his claim assessed under what is, in essence, a "for cause" standard, based upon the substantiality of the evidence. And an FEPA claim, which presumably can be surrendered for value, is at least as substantial as the right to an education labeled as property in *Goss* v. *Lopez, supra.*[6] Certainly, it would require a remarkable reading of a "broad and majestic ter[m]," *Board of Regents* v. *Roth*, 408 U. S., at 571, to conclude that a horse trainer's license is a protected property interest under the Fourteenth Amendment, while a state-created right to redress discrimination is not.

The Illinois Supreme Court nevertheless seemed to believe that no individual entitlement could come into being under the FEPA until the Commission took appropriate action within the statutory deadline. Because the entitlement arises from statute, the court reasoned, it was the legisla-

---

[6] An FEPA claim is therefore distinguishable from an enforcement action like those conducted by the National Labor Relations Board pursuant to the National Labor Relations Act, 29 U. S. C. § 151 *et seq.* In such a proceeding, the prosecution is controlled by the NLRB's General Counsel, and the Counsel's refusal to issue a complaint is generally not reviewable either by the Board or by the courts. See *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 138–139 (1975).

ture's prerogative to establish the "procedures to be followed upon a charge." 82 Ill. 2d, at 108, 411 N. E. 2d, at 282. This analysis, we believe, misunderstands the nature of the Constitution's due process guarantee.

Each of our due process cases has recognized, either explicitly or implicitly, that because "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek* v. *Jones,* 445 U. S. 480, 491 (1980). See *Arnett* v. *Kennedy,* 416 U. S., at 166–167 (POWELL, J., concurring in part); *id.,* at 211 (MARSHALL, J., dissenting). Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest. The Court has considered and rejected such an approach: "'While the legislature may elect not to confer a property interest, . . . it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. . . . [T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms.'" *Vitek* v. *Jones,* 445 U. S., at 490–491, n. 6, quoting *Arnett* v. *Kennedy,* 416 U. S., at 167 (opinion concurring in part).

Of course, the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether—just as it can amend or terminate its welfare or employment programs. The Court held as much in *Martinez* v. *California,* 444 U. S. 277 (1980), where it upheld a California statute granting officials immunity from certain types of state tort claims. We acknowledged that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels. Cf.

*U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S. 166, 174 (1980); *Hisquierdo* v. *Hisquierdo,* 439 U. S. 572, 575 (1979); *Flemming* v. *Nestor,* 363 U. S. 603, 609–610 (1960); *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 312, n. 8, 315–316 (1945). In each case, the legislative determination provides all the process that is due, see *Bi-Metallic Investment Co.* v. *State Bd. of Equalization,* 239 U. S. 441, 445–446 (1915); it "remain[s] true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *Martinez* v. *California,* 444 U. S., at 282. Indeed, as was acknowledged in *Martinez,* it may well be that a substantive "immunity defense, like an element of the tort claim itself, is merely one aspect of the State's definition of that property interest." *Id.,* at 282, n. 5. Cf. *Ferri* v. *Ackerman,* 444 U. S. 193, 198 (1979).

The 120-day limitation in the FEPA, ¶ 858(b), of course, involves no such thing. It is a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the FEPA claim. Because the state scheme has deprived Logan of a property right, then, we turn to the determination of what process is due him.

### B

As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that "*some* form of hearing" is required before the owner is finally deprived of a protected property interest. *Board of Regents* v. *Roth,* 408 U. S., at 570–571, n. 8 (emphasis in original). And that is why the Court has stressed that, when a "statutory scheme makes liability an important factor in the State's determination . . . , the State may not, consistent with due process, eliminate consideration of that factor in its prior hearing." *Bell* v. *Burson,* 402

U. S., at 541. To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.[7] See *id.*, at 542.

On the other hand, the Court has acknowledged that the timing and nature of the required hearing[8] "will depend on appropriate accommodation of the competing interests involved." *Goss* v. *Lopez*, 419 U. S., at 579. These include the importance of the private interest and the length or finality of the deprivation, see *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S., at 19, and *Mathews* v. *Eldridge*, 424 U. S., at 334–335; the likelihood of governmental error, see *id.*, at 335; and the magnitude of the governmental interests involved, see *ibid.*, and *Wolff* v. *McDonnell*, 418 U. S., at 561–563.

Each of these factors leads us to conclude that appellant Logan is entitled to have the Commission consider the merits of his charge, based upon the substantiality of the available evidence, before deciding whether to terminate his claim. Logan's interests in retaining his employment, in disproving his employer's charges of incompetence or inability, and—more intangibly—in redressing an instance of alleged discrimination, are all substantial. At the same time, the deprivation here is final; Logan, unlike a claimant whose charge is dismissed on the merits for lack of evidence, cannot obtain judicial review of the Commission action. A system or procedure that deprives persons of their claims in a random manner, as is apparently true of ¶ 858(b), necessarily

---

[7] This is not to suggest, of course, that the State must consider the merits of the claim when the *claimant* fails to comply with a reasonable procedural requirement, or fails to file a timely charge. See *infra*, at 437.

[8] Here, of course, we are not concerned with the timing of the required review on the merits. The Commission must consider the merits before the case may proceed; it is not meaningful to discuss the possibility of a post-termination hearing, because the property interest here is destroyed when the case is terminated.

presents an unjustifiably high risk that meritorious claims will be terminated. And the State's interest in refusing Logan's procedural request is, on this record, insubstantial.

There has been no suggestion that any great number of claimants are in Logan's position, or that directing the State to consider the merits of Logan's claim will be unduly burdensome. In any event, the State by statute has eliminated the mandatory hearing requirement, see n. 1, *supra*, demonstrating that it no longer has any appreciable interest in defending the procedure at issue.

Despite appellee Zimmerman Brush Company's arguments, the recent decision in *Parratt* v. *Taylor*, 451 U. S. 527 (1981), is not to the contrary. There, a state employee negligently lost a prisoner's hobby kit; while the Court concluded that the prisoner had suffered a deprivation of property within the meaning of the Fourteenth Amendment, it held that all the process due was provided by the State's tort claims procedure. In such a situation, the Court observed, "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Id.*, at 541. The company suggests that Logan is complaining of the same type of essentially negligent deprivation, and that he therefore should be remitted to the tort remedies provided by the Illinois Court of Claims Act, Ill. Rev. Stat., ch. 37, ¶ 439.1 *et seq.* (1979). That statute allows an action "against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person." ¶ 439.8(d).[9]

This argument misses *Parratt*'s point. In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of . . . property as a result of a random and unauthorized act by

---

[9] Logan might also have a remedy under the Equal Opportunities for the Handicapped Act (EOHA), Ill. Rev. Stat., ch. 38, ¶ 65–21 *et seq.* (1979), which provided an action for damages and "other relief" to those discriminated against on the basis of physical handicap. ¶ 65–29. While the EOHA also was repealed when the Illinois Human Rights Act was passed, see n. 1, *supra*, the latter statute does not disturb claims arising or accruing under the EOHA prior to July 1, 1980. ¶ 9–102(B)(2). It is not clear

a state employee . . . not a result of some established state procedure." 451 U. S., at 541. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. See *id.*, at 545 (second concurring opinion). Unlike the complainant in *Parratt*, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.

In any event, the Court's decisions suggest that, absent "the necessity of quick action by the State or the impracticality of providing any predeprivation process," a postdeprivation hearing here would be constitutionally inadequate. *Parratt*, 451 U. S., at 539. See *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S., at 19–20; *Board of Regents* v. *Roth*, 408 U. S., at 570, n. 7; *Bell* v. *Burson*, 402 U. S., at 542; *Boddie* v. *Connecticut*, 401 U. S., at 379. Cf. *Barry* v. *Barchi*, 443 U. S., at 64–65 (post-termination hearing permitted where the decision to terminate was based on a reliable pretermination finding); *Mathews* v. *Eldridge*, 424 U. S., at 343–347 (same). That is particularly true where, as here, the State's only post-termination process comes in the form of an independent tort action.[10] Seeking redress through a

to us, however, that such an action is available to Logan; the Illinois Supreme Court concluded that allowing Logan to file a second FEPA claim would frustrate the design of the FEPA by prejudicing the employer's rights, 82 Ill. 2d, at 109, 411 N. E. 2d, at 283, and it might well apply a similar analysis to bar an EOHA claim here. We would hesitate to remit Logan to so speculative a remedy. In any event, our conclusion about the inadequacy of any post-termination remedy here makes the availability of an EOHA suit irrelevant for present purposes.

[10] In *Ingraham* v. *Wright*, 430 U. S. 651 (1977), the Court concluded that state tort remedies provided adequate process for students subjected to

tort suit is apt to be a lengthy and speculative process, which in a situation such as this one will never make the complainant entirely whole: the Illinois Court of Claims Act does not provide for reinstatement—as appellee Zimmerman Brush Company conceded at oral argument, Tr. of Oral Arg. 39—and even a successful suit will not vindicate entirely Logan's right to be free from discriminatory treatment.

Obviously, nothing we have said entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations, cf. *Chase Securities Corp.* v. *Donaldson*, 325 U. S., at 314–316, or, in an appropriate case, filing fees. *United States* v. *Kras*, 409 U. S. 434 (1973). And the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. *Hammond Packing Co.* v. *Arkansas*, 212 U. S., at 351; *Windsor* v. *McVeigh*, 93 U. S., at 278. What the Fourteenth Amendment does require, however, "is 'an *opportunity* . . . granted at a meaningful time and in a meaningful manner,' *Armstrong* v. *Manzo*, 380 U. S. 545, 552 (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' *Mullane* v. *Central Hanover Tr. Co.*, *supra*, at 313." *Boddie* v. *Connecticut*, 401 U. S., at 378. It is such an opportunity that Logan was denied.

---

corporal punishment in school. In doing so, however, the Court emphasized that the state scheme "preserved what 'has always been the law of the land,' " *id.*, at 679, quoting *United States* v. *Barnett*, 376 U. S. 681, 692 (1964), and that adding additional safeguards would be unduly burdensome. 430 U. S., at 680–682. Here, neither of those rationales is available. Terminating potentially meritorious claims in a random manner is hardly a practice in line with our common-law traditions. And the State's abandonment of the challenged practice makes it difficult to argue that requiring a determination on the merits will impose undue burdens on the state administrative process.

## III

The judgment of the Supreme Court of Illinois, accordingly, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE O'CONNOR join.

The Court's opinion, *ante*, considers appellant Logan's due process claim and decides that issue in his favor. As has been noted, Logan also raised an equal protection claim and that issue has been argued and briefed here. Although the Court considered that it was unnecessary to discuss and dispose of the equal protection claim when the due process issue was being decided in Logan's favor, I regard the equal protection issue as sufficiently important to require comment on my part,[1] particularly inasmuch as a majority of the Members of the Court are favorably inclined toward the claim, although, to be sure, that majority is not the one that constitutes the Court for the controlling opinion.

On its face, Logan's equal protection claim is an unconventional one. The Act's ¶858(b) establishes no explicit classifications and does not expressly distinguish between claimants, and the company therefore argues that Logan has no more been deprived of equal protection than anyone would be who is injured by a random act of governmental misconduct. As the Illinois Supreme Court interpreted the statute, however, ¶858(b) unambiguously divides claims—and thus, necessarily, claimants—into two discrete groups that are accorded radically disparate treatment. Claims processed within 120 days are given full consideration on the merits,

---

[1] "It cannot be suggested that in cases where the author [in writing by assignment] is the mere instrument of the Court he must forego expression of his own convictions." *Wheeling Steel Corp.* v. *Glander,* 337 U. S. 562, 576 (1949) (separate opinion). See also *Abbate* v. *United States,* 359 U. S. 187, 196 (1959) (separate opinion); *Helvering* v. *Davis,* 301 U. S. 619, 639–640 (1937).

and complainants bringing such charges are awarded the opportunity for full administrative and judicial review. In contrast, otherwise identical claims that do not receive a hearing within the statutory period are unceremoniously, and finally, terminated. Because the Illinois court recognized, in so many words, that the FEPA establishes two categories of claims, one may proceed to determine whether the classification drawn by the statute is consistent with the Fourteenth Amendment.

For over a century, the Court has engaged in a continuing and occasionally almost metaphysical effort to identify the precise nature of the Equal Protection Clause's guarantees.[2] At the minimum level, however, the Court "consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker* v. *Wilson*, 450 U. S. 221, 230 (1981). This is not a difficult standard for a State to meet when it is attempting to act sensibly and in good faith. But the "rational-basis standard is 'not a toothless one,'" *id.*, at 234, quoting *Mathews* v. *Lucas*, 427 U. S. 495, 510 (1976); the classificatory scheme must "rationally advanc[e] a reasonable and identifiable governmental objective." *Schweiker* v. *Wilson*, 450 U. S., at 235. I see no need to explore the outer bounds of this test, for I find that the Illinois statute runs afoul of the lowest level of permissible equal protection scrutiny.

The FEPA itself has two express purposes: eliminating employment discrimination, and protecting employers and other potential defendants "from unfounded charges of discrimination." ¶851. It is evident at a glance that neither of these objectives is advanced by ¶858(b)'s deadline provision. Terminating potentially meritorious claims in a random manner obviously cannot serve to redress instances of discrimina-

---

[2] "Members of the Court continue to hold divergent views on the clarity with which a legislative purpose must appear . . . and about the degree of deference afforded the legislature in suiting means to ends . . . ." *Schweiker* v. *Wilson*, 450 U. S. 221, 243, n. 4 (1981) (dissenting opinion).

tion. And it cannot protect employers from unfounded charges, for the frivolousness of a claim is entirely unrelated to the length of time the Commission takes to process that claim. So far as this purpose is concerned, ¶858(b) stands on precisely the same footing as the state statute invalidated in *Lindsey* v. *Normet*, 405 U. S. 56 (1972). There, the Court struck down a provision requiring a tenant to post a double bond before appealing an adverse forcible entry judgment. "The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive," the Court noted, "for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." *Id.*, at 78. Accord, *Rinaldi* v. *Yeager*, 384 U. S. 305, 310 (1966). Here, of course, the FEPA may operate to terminate meritorious claims without any hearing at all, while allowing frivolous complaints to proceed through the entire administrative and judicial review process. While it may well be true that "[n]o bright line divides the merely foolish from the arbitrary law," *Schweiker* v. *Wilson*, 450 U. S., at 243 (dissenting opinion), I have no doubt that ¶858(b) is patently irrational in the light of its stated purposes.

In its opinion, however, the Illinois Supreme Court recognized a third rationale for ¶858(b): that provision, according to the court, was designed to further the "just and expeditious resolutio[n]" of employment disputes. *Zimmerman Brush Co.* v. *Fair Employment Practices Comm'n*, 82 Ill. 2d 99, 107, 411 N. E. 2d 277, 282 (1980). Insofar as the court meant to suggest that a factfinding conference may help settle controversies and frame issues for a more efficient future resolution, it was undoubtedly correct. But I cannot agree that terminating a claim that the State itself has misscheduled is a rational way of expediting the resolution of disputes.[3]

---

[3] The Illinois court concluded that the factfinding conference itself would help to resolve disputes expeditiously by encouraging settlement and "aid[ing] the Commission in setting up a procedural framework for the concilia-

Most important, the procedure at issue does not serve generally to hasten the processing or ultimate termination of employment controversies. Once the Commission has scheduled a factfinding conference and issued a complaint, there are no statutory time limits at all on the length of time it can take to resolve the claim. And ¶858(b) does not serve to protect employers from stale charges, because it does not function as a statute of limitation; Logan does not and could not quarrel with the requirement that complainants file their charges in a timely fashion.

It is true, of course, that ¶858(b) serves to expedite the resolution of certain claims—those not processed within 120 days—in a most obvious way, and in that sense it furthers the purpose of terminating disputes expeditiously. But it is not enough, under the Equal Protection Clause, to say that the legislature sought to terminate certain claims and succeeded in doing so, for that is "a mere tautological recognition of the fact that [the legislature] did what it intended to do." *U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S. 166, 180 (1980) (STEVENS, J., concurring in judgment). This Court still has an obligation to view the classificatory *system,* in an effort to determine whether the disparate treatment accorded the affected classes is arbitrary. *Rinaldi* v. *Yeager,* 384 U. S., at 308 ("The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes"). Cf. *U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S., at 178.

---

tory process which follows." 82 Ill. 2d, at 106, 411 N. E. 2d, at 281. It is less clear to me that the court viewed the practice of terminating misscheduled claims as one that would aid the just and expeditious resolution of controversies. In light of my conclusions about the rationality of such a justification, however, it is irrelevant whether the Illinois Supreme Court intended to state that this was the actual or articulated rationale for ¶858(b)'s deadline proviso. I note that the rationales discussed in the text have not been expressed by the State's representatives; the Illinois Human Rights Commission, by the State's Attorney General, has filed a brief in this Court supporting Logan.

Here, that inquiry yields an affirmative result. So far as the State's purpose is concerned, every FEPA claimant's charge, when filed with the Commission, stands on the same footing. Yet certain randomly selected claims, because processed too slowly by the State, are irrevocably terminated without review. In other words, the State converts similarly situated claims into dissimilarly situated ones, and then uses this distinction as the basis for its classification. This, I believe, is the very essence of arbitrary state action. "[T]he Equal Protection Clause 'imposes a requirement of some rationality in the nature of the class singled out,'" *James* v. *Strange*, 407 U. S. 128, 140 (1972), quoting *Rinaldi*, 384 U. S., at 308–309, and that rationality is absent here. The Court faced an analogous situation in a case involving sex-based classifications, and its conclusion there is applicable to the case before us now: giving preference to a discrete class "merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause . . . ." *Reed* v. *Reed*, 404 U. S. 71, 76 (1971).

Finally, it is possible that the Illinois Supreme Court meant to suggest that the deadline contained in ¶858(b) can be justified as a means of thinning out the Commission's caseload, with the aim of encouraging the Commission to convene timely hearings. This rationale, however, suffers from the defect outlined above: it draws an arbitrary line between otherwise identical claims. In any event, the State's method of furthering this purpose—if this was in fact the legislative end—has so speculative and attenuated a connection to its goal as to amount to arbitrary action. The State's rationale must be something more than the exercise of a strained imagination; while the connection between means and ends need not be precise, it, at the least, must have some objective basis. That is not so here.

I thus agree with appellant Logan that the Illinois scheme also deprives him of his Fourteenth Amendment right to the equal protection of the laws.

JUSTICE POWELL, with whom JUSTICE REHNQUIST joins, concurring in the judgment.

As the challenged statute now has been amended, this is a case of little importance except to the litigants. The action commenced with an isolated example of bureaucratic oversight that resulted in the denial even of a hearing on appellant's claim of discrimination. One would have expected this sort of negligence by the State to toll the statutory period within which a hearing must be held. The Supreme Court of Illinois, however, read the statutory terms as mandatory and jurisdictional.

The issue presented, at least for me, is too simple and straightforward to justify broad pronouncements on the law of procedural due process or of equal protection. I am particularly concerned by the potential implications of the Court's expansive due process analysis. In my view this is a case that should be decided narrowly on its unusual facts.*

The decision of the Illinois Supreme Court effectively created two classes of claimants: those whose claims were, and those whose claims were not, processed within the prescribed 120 days by the Illinois Fair Employment Practices Commission. Under this classification, claimants with identical claims, despite equal diligence in presenting them, would be treated differently, depending on whether the Commission itself neglected to convene a hearing within the prescribed time. The question is whether this unusual classification is rationally related to a state interest that would justify it.

---

*It is necessary for this Court to decide cases during almost every Term on due process and equal protection grounds. Our opinions in these areas often are criticized, with justice, as lacking consistency and clarity. Because these issues arise in varied settings, and opinions are written by each of nine Justices, consistency of language is an ideal unlikely to be achieved. Yet I suppose we would all agree—at least in theory—that unnecessarily broad statements of doctrine frequently do more to confuse than to clarify our jurisprudence. I have not always adhered to this counsel of restraint in my own opinion writing, and therefore imply no criticism of others. But it does seem to me that this is a case that requires a minimum of exposition.

The State no doubt has an interest in the timely disposition of claims. But the challenged classification failed to promote that end—or indeed any other—in a rational way. As claimants possessed no power to convene hearings, it is unfair and irrational to punish them for the Commission's failure to do so. The State also has asserted goals of redressing valid claims of discrimination and of protecting employers from frivolous lawsuits. Yet the challenged classification, which bore no relationship to the merits of the underlying charges, is arbitrary and irrational when measured against either purpose.

This Court has held repeatedly that state-created classifications must bear a rational relationship to legitimate governmental objectives. See, e. g., *Schweiker* v. *Wilson*, 450 U. S. 221, 230 (1981); *Lindsey* v. *Normet*, 405 U. S. 56 (1972). Although I do not join JUSTICE BLACKMUN's separate opinion, I agree that the challenged statute, as construed and applied in this case, failed to comport with this minimal standard. I am concerned by the broad sweep of the Court's opinion, but I do join its judgment.