Karen SMITH, Raymond Smith and
Mary Smith, Plaintiffs,

v.

VILLAGE OF GARDEN CITY, Garden City Police Department, Ernest Cipullo, individually and as commissioner, Garden City Police Department, Detective DiPaolo, Shield # 37, Detective Kenneth Sullivan, Shield # 144, County of Nassau and Nassau County Police Department, Defendants.

No. CV 82–2573.

United States District Court,
E.D. New York.

Sept. 11, 1984.

Robert Rivers, P.C., Hempstead, for plaintiffs.

Edward G. McCabe, Nassau County Atty., Mineola, for defendants County of Nassau and Nassau County Police Dept.

Quirk & Bakalor, New York City, for defendants Village of Garden City, Garden City Police Dept., DiPaolo and Sullivan.

Axelrod, Cornachio, Famighetti & Capetola, Mineola, for defendants Cipullo, DiPaolo & Sullivan.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought under 42 U.S.C. Section 1983.

On October 27, 1981, the New York City Police Department informed the Nassau County Police Department that an anonymous phone caller had reported that a person resembling Joanne Chesimard (a fugitive) was seen in a blue van travelling west on the Long Island Expressway. The New York City Police subsequently informed the Nassau County Police that the van, belonging to Alexander Wall Cleaning, was at 147 Hampton Road, Garden City, on a cleaning job. The Nassau County Police relayed this information to Garden City Police Department Commissioner Cipullo. Nassau County Police detectives arrived near the house, contacted the people in the house by telephone, and ordered that everyone exit the house. The people who emerged from the house included plaintiffs Raymond and Karen Smith. A Garden City Police officer, defendant DiPaola, arrived on the scene and ordered the four persons who had emerged from the house, including plaintiffs Raymond and Karen Smith, to walk towards the van. Karen Smith refus-

ed, though the others complied. Garden City Police officer defendant Sullivan then attempted to handcuff plaintiff Karen Smith. A struggle between the two ensued, during which Karen Smith was either shoved or fell to the ground. Defendant DiPaola took plaintiff Raymond Smith's wallet, and found several slips of paper with numbers written on them. Defendants DiPaola and Sullivan took plaintiffs Raymond and Karen Smith into custody and brought them to Garden City Police Headquarters. Karen Smith was charged with resisting arrest and obstruction of governmental administration. Raymond Smith was charged with possession of gambling records. Both were released on appearance tickets. All charges were subsequently dismissed.

Plaintiffs, all of whom are black, contend that defendants maliciously instituted criminal prosecutions against plaintiffs Karen and Raymond Smith; that defendants falsely arrested plaintiffs Karen and Raymond Smith on the basis of an anonymous tip; that defendants Sullivan and DiPaola shoved and threw to the ground plaintiff Karen Smith, causing her severe injury; that these actions were perpetrated solely because plaintiffs Karen and Raymond Smith are black and "were done with the sole purpose of subjecting them to physical abuse and emotional humiliation and to deprive them of their constitutional rights under the fourth, fifth, and fourteenth amendments"; that defendants Garden City Police Department and Village of Garden City "knew or with the exercise of reasonable diligence should have known that the plaintiffs KAREN and RAYMOND SMITH were not the individuals identified in the aforementioned anonymous "tip" ..."; and that defendants Village of Garden City, Garden City Police Department, County of Nassau, Nassau County Police Department, and Garden City Police Department Commissioner Ernest Cipullo "authorized, sanctioned and/or ratified" the actions of defendants Sullivan and DiPaola. Plaintiff Mary Smith, the

wife of plaintiff Raymond Smith, claims loss of consortium.

Defendants have moved to dismiss, in part on the ground that under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), an action under 42 U.S.C. Section 1983 does not lie when there exists an adequate state tort remedy.

In *Parratt, supra,* a prisoner sued for the loss of property resulting from failure to follow normal procedure for the receipt of mail packages. The Court held that since the deprivation of property did not occur as the result of some established state procedure, and since there existed an adequate state law remedy for the deprivation, an action under 42 U.S.C. Section 1983 did not lie. In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court held that the termination of an employment discrimination claim, arising from the state's failure to convene a hearing in timely fashion, constituted a deprivation of property without due process, notwithstanding the fact that the claimant could arguably have sued the state under state tort law for damages arising from the state's negligence in failing to convene a hearing. The Court explained that *Logan*, unlike *Parratt*, dealt with an established state procedure (i.e. the procedure of terminating a claim when a hearing was not timely convened), and that "the Court's decisions suggest that, absent "the necessity of quick action by the State or the impracticality of providing any pre-deprivation process", a post-deprivation hearing would be constitutionally inadequate." 455 U.S. at 436, 102 S.Ct. at 1158. The Supreme Court has recently extended *Parratt* to cover intentional as well as negligent deprivations of property. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

■ Plaintiffs have submitted a newspaper article, *"Crime in Suburbia: The Fear and the Facts"*, Newsday (May 25, 1983). According to this article, the Garden City Police Department states that it views all blacks who enter Garden City as suspicious, and has a policy of stopping suspicious people and running their names through a computer to determine if they are wanted on outstanding arrest warrants. Since the article does not constitute material which may be considered on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, we will not consider it.

■ Plaintiffs have also submitted an exerpt from the Nassau County Police Department rules and regulations dealing with warrantless arrests. In essence, the rules provide that an officer may make a warrantless arrest when he has reasonable cause to believe that the arrestee has committed an offense in the officer's presence, or has reasonable cause to believe that the arrestee has committed a crime, whether in his presence or otherwise. It is baffling to us how this document can be offered as proof that any violation which may have been committed by the individual police officers was committed pursuant to an established Nassau County policy. Since plaintiffs allege that the individual police officers acted *unreasonably*, the document in question, insofar as it has any relevance at all, tends to show that such alleged unreasonable acts were *not* committed pursuant to an established policy.

Plaintiffs have also submitted two Nassau County Police Department internal reports. Nothing contained in these reports suggest that any individual defendant committed a violation of 42 U.S.C. Section 1983 pursuant to an official policy.

■ It appears that plaintiffs have submitted no material which may be considered on a motion for summary judgment which indicates that the alleged false arrest and the alleged shoving of Karen Smith to the ground were committed pursuant to an official policy. We must therefore conclude that if any wrongdoing of these types took place, it consisted of mere random acts and did not occur pursuant to any officially established policy.

■ Since there is no reason to believe that New York state tort remedies would not be perfectly adequate to procure any

redress to which plaintiffs might be entitled, this action should be dismissed pursuant to *Parratt v. Taylor, supra.* Although plaintiffs have suggested that *Parratt* is limited to deprivations of property, "clearly the analysis in the *Parratt* majority opinion is not *per se* inapplicable to deprivations of liberty interests." *Holmes v. Ward,* 566 F.Supp. 863, 865 (E.D.N.Y.1983). Rather, the applicability of *Parratt* turns on "whether the nature of the act renders the provision of pre-deprivation safeguards impracticable." *Id.* at 866. Where, as here, there is no reason to believe that the acts complained of arose as a result of any established official policy, *Parratt* is applicable, and the existence of state post-deprivation remedies precludes a cause of action under 42 U.S.C. Section 1983 for false arrest or for the "shoving" incident.

Defendant CIPULLO, Commissioner of the Garden City Police Department, has stated in an affidavit that "[b]efore the arrests were processed into charges, our Department conducted a thorough investigation and the Office of the District Attorney, as well as our own Village Attorney, were consulted for approvals, which were given." Affidavit of Ernest Cipullo, Paragraph 6 (April 17, 1984).

From the foregoing it can be seen that if the prosecution which took place was in fact malicious, such malicious prosecution may not have been the result of a random act by a low-level government employee, but may have been the result of consultations among high-level officials. It might therefore appear at first glance that *Parratt* is inapplicable here, since *Parratt* dealt with random acts by a low-level employee. On reflection, however, it will be seen that here, as in *Parratt,* we deal with an alleged wrongdoing for which no meaningful pre-deprivation process could have been provided. Although a state cannot subject a person to a criminal penalty without first providing him with due process by way of a criminal prosecution, it does not follow that the state cannot subject a person to a criminal prosecution without first providing him with some pre-prosecution

form of process. It is obvious that the procedure for subjecting a person to a criminal penalty must necessarily start somewhere; to require that every stage of the procedure be preceded by some other form of process would lead to an infinite regress. Consequently, we hold that in the instant case, no meaningful process could have been provided prior to the alleged "deprivation" (the institution of a malicious prosecution). Since New York provides a tort remedy for malicious prosecution, no action for malicious prosecution lies under 42 U.S.C. Section 1983 in the instant case, pursuant to *Parratt.*

Defendants' motions for summary judgment are granted. Plaintiffs' federal claims are dismissed on the merits. Plaintiffs' state law claims are dismissed for lack of jurisdiction. The Clerk shall enter judgment accordingly.

SO ORDERED.