Mark **FARRELL**, Plaintiff,

v.

**Anthony A. MIKLAS, Shield 3757, Individually and as a state trooper of the New York State Police Dept.; "John Doe", whose real name and badge # are unknown, individually and as a police officer of the New York State Police Dept., Defendants.**

No. **CV 84–2543.**

United States District Court,
E.D. New York.

March 28, 1985.

Mitchell Gittin, Brentwood, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y. by Dewey Lee, Asst. Atty. Gen., Mineola, N.Y., for defendant Miklas.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought under 42 U.S.C. § 1983. Defendant has moved to dismiss on the ground that the complaint fails to state a claim for relief under that statute as interpreted by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

### I. FACTS

Defendant Miklas is a state trooper employed by the New York State Police Department.

Plaintiff makes the following allegations, which for the limited purpose of deciding this motion we will regard as true. On June 12, 1983, an unidentified state trooper shouted at the people in a parking lot, ordering them to move their cars. Plaintiff, who was seated in a vehicle, moved the vehicle. Plaintiff was then arrested for operating a vehicle while intoxicated. Plaintiff was then handcuffed to a chair. Plaintiff asked why he had been arrested. Defendant Miklas told plaintiff to "shut up", and pretended to be preparing to punch plaintiff. Plaintiff asked Miklas if Miklas was going to hit him. Miklas used abusive language, grabbed plaintiff by the ears, and banged the back of plaintiff's head against a soda vending machine several times. Miklas walked out of the room. Out of frustration, plaintiff swung the chair to which he was shackled. Miklas returned, threw plaintiff to the ground, and stepped on plaintiff's neck, causing plaintiff to be unable to breathe. Another state trooper, defendant "John Doe", joined in the attack on plaintiff. Both continued to stomp on plaintiff. Plaintiff was then

handcuffed to a hook on the floor. Plaintiff was asked to take a breathalyzer test, but refused. Plaintiff was taken to a hospital, x-rayed, and had a cast put on his broken arm. Miklas swore to an accusatory instrument charging plaintiff with violation of N.Y. Vehicle & Traffic Law § 1192(2) and (3), which prohibits operation of a motor vehicle by a person who is intoxicated or who has .10 of one per centum by weight of alcohol in his blood. Miklas knew that the accusation was false, and acted with malice. The case was subsequently dismissed by court order.

## II. DISCUSSION

### A. Case Law

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that a prisoner's loss of property, allegedly caused by the random unauthorized negligent failure of prison personnel to follow normal procedures for the receipt of mail packages, did not give rise to a claim for relief under 42 U.S.C. § 1983, given the existence of adequate state law tort remedies. The Court reasoned that, although the complaint properly alleged or could be construed as properly alleging that the defendant prison officials deprived plaintiff of property through action under color of state law, the alleged deprivation did not occur *without due process*, since (1) the state could not have provided any pre-deprivation process, given the fact that the deprivation resulted from random unauthorized acts rather than from established state procedures, and (2) the state did provide an adequate post-deprivation tort law remedy.

In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court held that the termination of an employment discrimination claim, arising from the state's failure to convene a hearing in timely fashion, constituted a taking of property without due process, notwithstanding the fact that the claimant could arguably have sued the state under state tort law for damages arising from the state's negligence in failing to convene a hearing. The Court emphasized that *Logan*, unlike *Parratt*, involved an established state procedure rather than a random unauthorized act by a state employee.

In *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that an alleged intentional unauthorized deprivation of a prisoner's property by a prison guard did not give rise to a claim for relief under 42 U.S.C. § 1983, given the existence of adequate post-deprivation state tort law remedies, on the ground that *Parratt* applies to intentional as well as negligent random unauthorized deprivations of property.

In *Conway v. Village of Mount Kisco*, 758 F.2d 46, 48 (2d Cir. 1985), the Court stated that "in both *Hudson* and *Parratt* the [Supreme] Court carefully limits its holding to special situations involving deprivations of property". The Second Circuit therefore refused to apply the *Parratt* and *Hudson* doctrines to an action for malicious prosecution.

 The instant case involves alleged deprivations of *liberty* rather than *property*. Consequently, we are compelled by the *Conway* decision to hold that the instant complaint states a claim for relief under 42 U.S.C. § 1983, notwithstanding the fact that plaintiff has not alleged that the state could have prevented the alleged actions by defendants, and notwithstanding the possibility that there may exist adequate post-deprivation remedies under state law. The motion to dismiss will therefore be denied.

### B. Analysis

Although, as we have held, we are compelled by the *Conway* decision to deny the motion to dismiss, we will nevertheless set forth the reasoning which we would have applied in the absence of the *Conway* decision.

This Court has previously held that *Parratt* is applicable to random unauthorized deprivations of liberty as well as property. *Smith v. Village of Garden City*, 592 F.Supp. 637, 640 (E.D.N.Y.1984); *Holmes*

*v. Ward,* 566 F.Supp. 863, 865 (E.D.N.Y. 1983). *Accord, Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984); *Augustine v. Doe,* 740 F.2d 322 (5th Cir.1984); *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983); *Haygood v. Younger,* 718 F.2d 1472 (9th Cir.1983). However, there is a good deal of authority for the proposition that *Parratt* is inapplicable to "alleged violations of substantive constitutional proscriptions applicable to the states because of incorporation into the due process clause of the fourteenth amendment", *see e.g., Thibodeaux, supra,* at 333; *Augustine, supra,* at 325. In order to determine the validity of this latter proposition, it will be necessary for us to inquire into the distinction between substantive and procedural due process.

As we understand, the "substantive" component of the Due Process Clause of the Fourteenth Amendment places limits upon the ability of a state to establish a policy of inflicting certain types of harms upon persons after certain facts concerning such persons have been established. By contrast, the "procedural" component of the Due Process Clause of the Fourteenth Amendment places limits upon the methods by which a state can go about determining whether a given set of factual allegations concerning a person is in fact true, in circumstances where the factual allegations would (if found to be true) lead to the infliction of certain types of harms upon the person pursuant to the substantive policy of the state. For example, when a state declares a particular act to constitute a crime, or declares that a particular crime is subject to a particular punishment, the state is creating substantive policy, and must act consistently with the substantive component of the Due Process Clause. By contrast, when the state establishes rules of evidence or methods of jury selection, the state is creating procedural policy, and must act consistently with the procedural component of the Due Process Clause. Under this view, whether a state action is "substantive" or "procedural" is in no way dependent upon whether the state action is alleged to be violative of the provisions of the Bill of Rights insofar as they are made

applicable to the states by the Due Process Clause, or whether the state action is rather alleged to be violative of the Due Process Clause *simpliciter.* For example, a state court which enjoins allegedly false advertising without adequate notice and hearing is engaging in a violation of procedural due process, notwithstanding the fact that its action may be violative of the First Amendment.

The notion that *Parratt* is inapplicable to deprivations of rights secured by the Bill of Rights finds some support in the *Parratt* opinion. The Court noted that, whereas earlier Supreme Court cases discussing 42 U.S.C. § 1983 had dealt with alleged deprivations of rights secured by the Fourth and Eighth Amendments, the plaintiff in *Parratt* "refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter.*" 451 U.S. at 536, 101 S.Ct. at 1913. However, the Court did not explicitly state that *Parratt* is inapplicable to Bill of Rights cases.

The view that *Parratt* is inapplicable to violations of substantive due process finds support in the concurring opinion of Justice Blackmun (joined by Justice White), 451 U.S. at 545–546, 101 S.Ct. at 1918, and the concurring opinion of Justice Powell, 451 U.S. at 552–553, 101 S.Ct. at 1921–1922. *See also Hudson v. Palmer,* ── U.S. ──, 104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (Stevens, J., concurring in part and dissenting in part, joined by Brennan, J.; Marshall, J.; Blackmun, J.) (1984).

Notwithstanding implications to the contrary in the *Parratt* majority opinion, we think there is nothing in the logic of the opinion which prevents its applicability to cases dealing with alleged violations of the Bill of Rights. The opinion holds that a "deprivation without due process" within the meaning of the Due Process Clause of the Fourteenth Amendment does not occur if (1) the state could not practically have provided pre-deprivation process, and (2) the state provides adequate post-deprivation process. The opinion thus turns upon

an interpretation of the wording of the Due Process Clause. Nothing in the logic of this analysis justifies drawing a distinction between those deprivations of life, liberty and property prohibited by specific provisions of the Bill of Rights as incorporated in the Due Process Clause, and other deprivations of life, liberty and property prohibited by the Due Process Clause.

Similarly, the logic of the *Parratt* opinion does not justify the view that *Parratt* is inapplicable to violations of substantive due process. In fact, *Parratt* itself may be classified as a "substantive due process" case at least as easily as it may be classified as a "procedural due process" case. In *Parratt* neither the state nor its employees at any point acted on the assumption that plaintiff had in fact committed acts justifying the deprivation of plaintiff's property. Indeed, neither the state nor its employees acted on any assumption whatsoever; plaintiff alleged merely that the state's employees had been negligent. It is quite possible to argue that mere negligence does not even constitute a "deprivation", much less a "deprivation without due process". 451 U.S. at 544–545, 101 S.Ct. at 1917 (Stewart, J., concurring in the result). If, however, one accepts the view of the majority opinion that a negligent act may constitute a "deprivation", and that the Due Process Clause requires that the state pay compensation for negligent deprivations of property caused by state action, then one is annunciating a principle of *substantive* law. *See* 451 U.S. at 546–554, 101 S.Ct. at 1918–1922 (Powell, J., concurring in the result).

By the same token, *Hudson v. Palmer,* — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) involved substantive due process. There, plaintiff alleged that a prison guard had intentionally destroyed plaintiff's noncontraband personal property. Here again, there was no suggestion that the guard acted on the assumption that plaintiff had in fact committed acts justifying the deprivation of plaintiff's noncontraband property. If, as plaintiff alleged, the guard destroyed plaintiff's noncontraband property for no just reason, then the guard

acted on an invalid *substantive* policy of destroying property without reason, albeit a policy not approved by the state. Whereas in *Parratt* a plausible argument could be made that a state could adopt a substantive policy of not providing for compensation for losses caused by the negligence of state actors, in *Hudson* there was no doubt that the alleged substantive policy of deliberate destruction of property without reason was one which a state itself could not constitutionally adopt in the absence of provisions for compensation. The issue in *Hudson* was whether the alleged unauthorized random intentional implementation of such a substantive policy by a state employee was enough, in and of itself, to make out a claim for relief under 42 U.S.C. § 1983, or whether the existence of adequate post-deprivation remedies would defeat such a claim for relief. A highly plausible argument (which we would agree with) could be made that the existence of post-deprivation remedies should not defeat a claim for relief against the guard, whose personal moral culpability ought in no way be mitigated by the fortuitous existence of post-deprivation remedies provided by a third party, the state. The Court, however, rested its decision upon the inability of the *state* to provide pre-deprivation process, and the willingness of the *state* to provide post-deprivation remedies. *Hudson* thus turns not upon the nature of the injury inflicted by the guard, but rather upon the degree of culpability or lack thereof on the part of the state. Consequently, the notion that *Parratt* and *Hudson* do not apply when the alleged injury is one which the state could not inflict under any circumstances regardless of the amount of process provided, is, we think, erroneous. *Hudson* itself involved an injury inflicted by a guard which the state could not legally have inflicted had it possessed the same factual assumptions as the guard, regardless of the amount of process provided. *Parratt* itself involved an injury negligently inflicted which, according to the majority, the state could not refuse to compensate regardless of the process provided.

The Supreme Court found that claims for relief could be barred in *Parratt* and *Hudson, not* because the alleged injuries were of a kind that the state could lawfully inflict if sufficient process was provided, but *rather* because the willingness of the state to provide process to determine whether the alleged injuries were in fact inflicted and to provide compensation if the injuries were in fact inflicted would (in the absence of the ability of the state to prevent the initial infliction of the injury through official policy) serve to reduce the degree of state culpability below that required for a violation of the Due Process Clause and a claim for relief under 42 U.S.C. § 1983.

For the above reasons, we would have held (were we not precluded by *Conway*) that, pursuant to *Parratt v. Taylor, supra,* and *Hudson v. Palmer, supra,* a claim for relief does not lie under 42 U.S.C. § 1983 where (1) the state could not practically have provided pre-deprivation process, due to the fact that the alleged deprivation occurred as a result of a random unauthorized act by a state employee rather than as a result of an established state policy, or the state for some other reason could not have provided pre-deprivation process, and (2) the state does provide an adequate post-deprivation remedy, regardless of whether the alleged deprivation is of life, liberty, or property, and regardless of whether the alleged deprivation violates the substantive or the procedural component of the Due Process Clause of the Fourteenth Amendment, and regardless of whether the alleged deprivation violates a specific provision of the Bill of Rights. While we disagree with the *Hudson* decision, we believe that this is its logical consequence.

There is an additional reason why we would hold (were we not precluded by *Conway*) that the malicious prosecution claim here does not state a claim for relief under 42 U.S.C. § 1983. Even leaving aside the random unauthorized nature of the alleged institution of a malicious prosecution in this case, it must be borne in mind that a criminal prosecution must begin somewhere and that it is impossible that every stage of a prosecution should be preceded by some form of process. Consequently, it is impractical for the state to provide process prior to the institution of a prosecution. Consequently, where, as here, there is an adequate state law post-deprivation remedy for malicious prosecution, an action for malicious prosecution should not lie under 42 U.S.C. § 1983. *Smith v. Village of Garden City,* 592 F.Supp. 637, 640 (E.D.N.Y. 1984).

## III. ELEVENTH AMENDMENT

■ One final note is in order. The complaint purports to sue defendants not only in their individual capacities, but also in their capacities as state troopers. The Supreme Court has recently held that a suit for damages against a person in his official capacity ordinarily constitutes a suit against the government entity the person works for, for damages. *Brandon v. Holt,* — U.S. ——, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). In the instant case, plaintiff's motion papers make clear that he does not seek damages from the state. The attempt to sue defendants "as state troopers" appears to have been a mere rhetorical flourish, since defendants control no assets separate from their individual assets by virtue of their positions as state troopers. An attempt to sue the state for damages would appear barred by the Eleventh Amendment. Since plaintiff has made clear that he is not attempting such a suit, we need not address the Eleventh Amendment issue.

## IV. CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.