Berthold R. KRAMER

v.

Larry M. NEWMAN, et al.

No. 92–3015.

United States District Court,
E.D. Pennsylvania,
Civil Division.

March 12, 1993.

**326**

Berthold R. Kramer, pro se.

Michael I. Levin, Willow Grove, PA, for defendants.

### *MEMORANDUM*

BARTLE, District Judge.

Plaintiff, Berthold R. Kramer ("Kramer"), has brought this federal civil rights action, pursuant to 42 U.S.C. § 1983, against the Neshaminy School District ("the District"), located in Bucks County, Pennsylvania, and against the individual members of the District's Board of Directors ("the Board").[1] Kramer, who served as a science and biology teacher for the District for approximately 24 years, was terminated from his tenured employment at the Neshaminy Junior High School by the Board on May 22, 1990. The propriety of that termination was subsequently upheld in binding arbitration.

Kramer seeks reinstatement to his position, compensatory and punitive damages, and certain additional relief, including but not limited to reimbursement for his attorneys' fees and the costs of the suit. He claims entitlement to such relief on the following grounds:

> (a) He was not given adequate pretermination notice of at least some of the charges against him including the charge of immorality or meaningful pretermination opportunity to be heard on at least some of the charges including that of immorality.
>
> (b) His posttermination grievance procedure was tainted because the arbitrator had undisclosed relations with a member of the Board raising questions as to his impartiality.

Complaint at ¶ 20.

Presently before the Court are cross motions for summary judgment. Plaintiff has moved for a partial summary judgment on the issue of liability, and defendants have moved for summary judgment on all issues. For the reasons set forth below, the motion of plaintiff will be denied and the motion of defendants will be granted.

The standards for deciding summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure are well settled.[2] To obtain summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute. *Celotex Corporation v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party. A factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 248, 106 S.Ct. 2505, 2511, 2510, 91 L.Ed.2d 202 (1986).

---

1. 42 U.S.C. § 1983, entitled "Civil Action for Deprivation of Rights," provides, in pertinent part, as follows:

    > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. Rule 56(c) provides in pertinent part that:

    > The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In deciding whether the summary judgment standard has been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invest.,* 951 F.2d 1399, 1404 (3d Cir.1991). Where the moving party submits evidence in support of the motion which indicates that there is no genuine issue of material fact, the adverse party must submit evidence to resist the motion. Bare allegations or denials will not suffice. *See Adickes v. S.H. Kress,* 398 U.S. 144, 160–162, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e). Further, in ruling on a summary judgment motion a court may, in appropriate cases, render partial summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. *See Cohen v. Board of Trustees,* 867 F.2d 1455 (3d Cir.1989) (*in banc*) and Fed.R.Civ.P. 56(d).[3]

In ruling on the outstanding summary judgment motions the critical question for this Court's determination is the adequacy of the pretermination procedures which defendant followed in terminating plaintiff's employment, and most particularly whether defendant gave Kramer adequate pretermination notice and a meaningful opportunity to be heard.

In Pennsylvania tenured school district professional employees, such as Mr. Kramer, unquestionably have a property right in their continued employment. *See* 24 Pa.Cons.Stat. Ann. § 11–1122;[4] *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Because of the existence of this right, discharge procedures must comply with the due process clause of the Constitution. *Ibid.*

Due process unquestionably requires that "some form of hearing" be held before an individual is deprived of a property interest. It further requires that the opportunity exist "to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14·L.Ed.2d 62 (1965)). *See also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 1156–1157, 1159, 71 L.Ed.2d 265 (1982). This does not mean, however, that a full evidentiary hearing before discharge is always necessary or even usually required. In fact, the Supreme Court has stated that "the ordinary principle, established by our decisions, [is] that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Mathews v. Eldridge,* 424 U.S. at 342, 96 S.Ct. at 907.

The Supreme Court's decision in *Cleveland Board of Education v. Loudermill, supra,* which involved the termination of a nonprofessional school district employee, explained why full pretermination evidentiary hearings are not required. The Court stated:

> ... the pretermination hearing need not definitively resolve the propriety of the discharge. *It should be an initial check against mistaken decisions*—essentially, a determination of whether there are reasonable grounds to believe that the charges

---

3. Rule 56(d) provides in full as follows:
   **Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action

the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

4. 24 Pa.Cons.Stat.Ann. § 11–1122 provides, in pertinent part, that:
   The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee....

against the employee are true and support the proposed action....

... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Cleveland Board of Education v. Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (emphasis added; citations omitted).

Beginning in mid–1987, and on a reasonably consistent basis thereafter until the time of his discharge, plaintiff received written warnings from supervisory school board employees about his use of force against students in violation of the District's policy on corporal punishment. To assist plaintiff in modifying his behavior with respect to such handling of student discipline problems, the District embarked on a course of progressive discipline against Kramer (DX Jones Aff. A, ¶ 8).[5] That course of conduct—which included numerous meetings with respect to the complaints of undue force against students and a recommendation that Kramer seek professional help—did not ultimately prove to be successful. As a result, the District Deputy Superintendent suspended plaintiff from his employment with pay on March 8, 1990, and the Board finally terminated him at a meeting held on May 22, 1990 (DX Jones Aff. A, ¶ 14, 20).

On each of the numerous occasions when Kramer was alleged to have used force in contravention of District policy, interviews were promptly conducted, and investigations were otherwise undertaken, with respect to those incidents. The School District officials who conducted the interviews and investigations included the District Director of Human Resources, the Principal of Neshaminy Junior High School, the Vice Principal of Neshaminy Junior High School, and a District Deputy Superintendent. (*See* DX Jones

Aff. A, ¶ 11, 13, 15; Hoffman Aff. B, ¶ 18; McMasters Aff. C, ¶ 5; Stanford Aff. D, ¶ 4). Further, with respect to each of the allegations of misconduct, the District gave Kramer notice of their substance and advised him of the nature of its evidence.

Kramer appeared at a series of meetings and grievance hearings to contest the charges of improper use of force and improper discipline. These were conducted on, among other dates, June 10, 1987, March 28, 1988, January 30, 1989, February 24, 1989, March 20, 1989, May 2, 1989, July 5, 1989, March 7, 1990, March 8, 1990, and March 14, 1990. The individuals attending these meetings and hearings varied. However, in addition to Kramer—who usually had at least one union representative present—participants included the District Superintendent and District Deputy Superintendent, the Neshaminy Junior High Principal and Vice Principal, and the District Director of Human Resources. (*See* DX Jones Aff. A, ¶¶ 10, 11, 13, 14, 20, 22; Hoffman Aff. B; McMasters Aff. C, ¶¶ 10–11, 19–21, 22, 35, 38; Stanford Aff. D, ¶¶ 4, 6–7, 9–10, 21–22, 27, 30). Besides attending these many meetings and hearings, Kramer was permitted to file written responses to the allegations and chose to do so on at least one occasion (DX Jones Aff. A, ¶ 12, Ex. 6).

Following the May 2, 1989 meeting, Kramer's principal suspended him for five days without pay. Thereafter, additional incidents involving the improper use of force against students occurred. The District Deputy Superintendent indefinitely suspended Kramer, with pay, at the conclusion of a March 8, 1990 meeting regarding such incidents. That meeting was attended at least by Kramer, the Deputy Superintendent, and the District Director of Human Resources. (DX Jones Aff. A, ¶ 20).

Finally, the President of the Board notified Kramer on March 26, 1990, in accordance with 24 Pa.Cons.Stat.Ann. § 11–1127, that a Board hearing was scheduled for April 5,

---

5. Defendants' exhibits to their summary judgment motion are delineated by the notation DX, while plaintiff's exhibits are delineated by the notation PX. Insofar as plaintiff's exhibits are sequentially paginated, they can be identified merely by page number. Defendants' exhibits, however, are not sequentially numbered and are comprised of nine (9) affidavits or exhibits, identified as by the letters A–I, some of which have attached numbered exhibits.

1990, to determine whether there was valid cause for his dismissal.[6] The charges to be heard were as follows:

A. Persistent and willful violation of the School Laws of Pennsylvania, including but not limited to Section 1370 of the Public School Code, 22 Pa.Code Section 12.5 entitled "Student Rights Regulations" and School Board Policy 505 [relating to the use of force and corporal punishment against students] of the Neshaminy School District. Violation of the foregoing occurred as a result of your physical contact with the students identified below on the following dates:

| Date | Student |
|------|---------|
| 3/8/90 | [The students' names |
| 3/8/90 | were included in the |
| 3/8/90 | Notice of Charge and |
| 3/8/90 | Hearing but have been |
| 3/6/90 | deleted here.] |
| 5/9/89 | |
| 1/19/89 | |
| 1/19/89 | |
| 1/19/89 | |
| 3/17/88 | |
| 4/29/88 | |
| 5/28/87 | |
| 4/27/87 | |
| 4/27/87 | |

B. Persistent negligence during the school years 1987–88, 1988–89 and 1989–90—You have failed to follow specific guidelines established by the Administration with regard to student behavior problems within your classroom as evidenced by memorandums directed to you on 4/5/88, 5/17/88, 6/20/88 9/8/88, 3/20/89, 6/12/89, and 9/22/89. There was also a meeting with you on 3/7/90.

C. Immorality—On March 2, 1990 during an assembly program, you made comments of a sexual nature to a teacher during that school activity which were inappropriate and considered offensive.

(DX Exhibit 23 to Jones Aff. A).[7]

■ Following his receipt of the Board's Notice of Charges and Hearing, Kramer exercised his statutory and contractual rights to proceed by way of binding arbitration, rather than by hearing before the Board.[8] Additionally, in order to abbreviate the usually time-consuming process of selecting an arbitrator and to expedite his case's resolution, Kramer, through his attorney, proposed the names of three arbitrators in the hope

6. 24 Pa.Cons.Stat.Ann. § 11–1127 provides as follows:

Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

7. The record further establishes that plaintiff Kramer's teaching performance for the school year 1988–1989 was found to be unsatisfactory. (See e.g. DX Jones Aff. A at ¶ 20 and Exhibit 15). Insofar, however, as that unsatisfactory performance was not part of charges contained in the District's March 26, 1990, Notice of Charges and Hearing, and did not enter into the arbitrator's ultimate determination with respect to the propriety of Kramer's discharge (see DX, Opinion of Arbitrator Stanley J. Schwartz, Exhibit 6 to Aff. F, at pages 14–23), the circumstances surrounding that determination are irrelevant and need not be considered.

8. A school board hearing is not the exclusive means of finally determining whether dismissal is appropriate. Where, as here, an agreement is in effect, which was negotiated in accordance with the Public Employe Relations Act, 43 Pa. Stat.Ann. § 1101.101 et seq., and which provided "for the right of the exclusive representative to grieve and arbitrate the validity of a professional employe's termination," that agreement is not superseded or preempted by § 11–1127. See 24 Pa.Stat.Ann. § 11–1133 which additionally provides that:

Professional employes shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1121 through 1132, but not both.

that one or more of those individuals might be acceptable to the Board (DX Kozub Aff. F, ¶¶ 6–8 and Exhibit 3).

The Board accepted Dr. Stanley Schwartz, one of the three arbitrators suggested by Kramer. On May 22, 1990, before the arbitration hearing, the Board dismissed Kramer without a hearing with the understanding that "the issue to be determined by the Arbitrator is whether the discipline imposed upon Berthold Kramer is for just cause and if not what the remedy would be." (DX Exhibits 4 and 5 to Aff. F; DX Exhibit G, Kramer Deposition of January 4, 1993, at page 128).

The subsequent arbitration hearing, which was held in August, September, and October of 1990, consumed four days and afforded the parties a full opportunity to examine and cross-examine witnesses and to submit arguments and evidence in support of their respective positions (DX Schwartz Opinion, Exhibit 6 to Aff. F, at page 1). Thereafter, on January 30, 1991, Dr. Schwartz issued a lengthy, carefully considered, and thoughtful opinion in which he concluded that there was just cause for Kramer's termination because:

> What has occurred here is that the School District clearly warned Kramer that his behavior in violating Policy 505 and in disregarding his principal's directives with respect to the "laying on of hands" on students and his classroom management of discipline was unacceptable. The School District administered progressive discipline in an attempt to correct Kramer's behavior. They did counsel with him, warn him verbally and in writing and finally suspended him twice. This is in keeping with all modern approaches to discipline in the work world. However, Kramer did not respond. He did not modify his behavior. He persisted in continuing to use excessive physical force on his students.

Under these circumstances, the arbitrator finds that the School District had just cause to not only administer five-day disciplinary suspension in May, 1989 but that it also had just cause for discharging Kramer in May, 1990.

(*Ibid.* at page 23).

The evidence, viewed in the light most favorable to plaintiff, clearly establishes that Kramer was given proper notice of his proposed dismissal in accordance with the mandate of § 11–1127. He also had meaningful opportunities to challenge the validity of the pertinent complaints brought against him, both personally and by the filing of written responses, at or about the time that they were lodged.[9] This evidence also establishes that plaintiff elected, pursuant to § 11–1133, to have the propriety of his discharge determined by binding arbitration, rather than by a full pretermination school board evidentiary hearing which would have been conducted as specified by § 11–1127.

■ The initial question for this Court's determination is whether the opportunities which were afforded Kramer before his termination, to respond to the various complaints, were sufficient to comply with due process. This Court holds that the pretermination procedures here employed unquestionably comported with the due process clause of the Fifth Amendment.

The arbitrator upheld plaintiff's discharge based on the charges of improper use of corporal punishment against students. Unlike the case in *Loudermill*, Kramer was afforded the opportunity to respond to each and every one of those charges during the series of ten or so meetings with District officials. The pretermination opportunities to defend against those charges which the arbitrator later upheld not only provided "an

---

9. The record is not clear that Kramer had full notice and a proper opportunity to defend against the complaint of immorality which was lodged by a fellow teacher on February 7, 1990 (Exhibit 40 to DX Aff. D), and which was contained in the Notice of Charges and Hearing. That fact, however, is not material to the disposition of the pending motions. Dr. Schwartz ultimately found that the evidence did "not support" the charge of immorality and that "there is no

real basis" for such a charge (Schwartz Opinion at DX Aff. F, Exhibit 6, page 13). As such, Schwartz's binding determination to uphold Kramer's termination relied entirely on complaints where there was more than adequate pretermination notice and an opportunity to be heard. Thus, the "immorality" charge has no relevance whatsoever to the issues before the Court.

initial check against mistaken decisions," but also established "reasonable grounds to believe that the charges against the employee are true and support the proposed action." *See Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. *See also Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

Similarly, in *Pedersen v. South Williamsport Area School District,* 677 F.2d 312, 313–314 (3d Cir.1982), the Court of Appeals found that a school maintenance employee received all the process that was due when he was given notice of the charges against him, was represented by a union official at a hearing before the school superintendent, was discharged by the school board in an executive session, and had a full posttermination arbitration hearing. The *Pedersen* court also held that an arbitration proceeding, negotiated in accordance with the Pennsylvania Public Employe Relations Act, rather than a School Board hearing, satisfies due process. The Court noted that "because of the possibility of bias on the part of the school board, · arbitration offers employees the advantage of a more impartial adjudicator." *Ibid.* at 315, 317.

■ The only additional matter for consideration by the Court with respect to the pending summary judgment motions, therefore, is whether the posttermination arbitration procedure "was tainted because the arbitrator had undisclosed relations with a member of the Board raising questions as to his impartiality" (Complaint at subsection (b) of ¶ 20).[10] Plaintiff's theory in support of such a result is his belief that "Dr. Schwartz [the arbitrator] did not disclose his professional and friendship relationship with Larry Newman," the President of the Board (Kramer deposition of September 29, 1992, at DX Exhibit I, page 69; *see also* DX Newman Aff. E, ¶ 1). The difficulty with this claim is

Kramer's failure to support it with any proper evidence.

Defendants have presented evidence that there was no relationship whatsoever between Doctors Newman and Schwartz before the conclusion of the arbitration. Dr. Newman categorically stated in his affidavit in support of defendants' summary judgment motion that, although he and Dr. Schwartz both taught at Rider College, they "had never even spoken to one another until June 2, 1991, five months after Dr. Schwartz's opinion was circulated, when we met at a graduation party for a student we had each taught at some point." (DX Newman Aff. E, ¶ 6). Dr. Newman also averred that he was unaware of Dr. Schwartz's selection as the arbitrator in the Kramer matter and that he had no direct or indirect communication with Dr. Schwartz before or during the arbitration process. (*Ibid.* at ¶ 7).

Plaintiff's contrary argument is speculative and entirely without proper foundation. When questioned about this allegation during his September 29, 1992, deposition Kramer testified as follows:

Q. Mr. Kramer—

A. Dr. Schwartz did not disclose his professional and friendship relationship with Larry Newman.

Q. Mr. Kramer, the question is, do you have any knowledge, information or evidence that Dr. Schwartz knew that Larry Newman was on the School Board of the Neshaminy School District? It's a very specific question.

A. Are you talking about written evidence?

Q. Or verbal evidence? Any evidence that he knew that fact?

---

10. In handwritten letters dated January 30, 1993, and January 31, 1993, Kramer attempted to raise certain additional challenges to the arbitration proceedings (as well as various other irrelevant matters). Those challenges, however, were well beyond the scope of his complaint. Thus, they need not be considered by this Court.

With regard to those letters, this Court parenthetically notes that it originally appeared that they were intended to take the place of a brief in opposition to defendants' motion for summary

judgment. On March 2, 1993, however, after the initial preparation of this opinion and 18 days after plaintiff's filing deadline, Kramer filed a formal brief in opposition to defendants' summary judgment motion. Although untimely, the Court reviewed the arguments set forth therein. It also delayed issuance of this opinion pending receipt of a reply brief. The Court's review of the brief in opposition and the reply brief establishes that the arguments contained in plaintiff's late filing are unpersuasive.

A. I have circumstantial evidence and only under oath in a court of law would I feel that these kind of things could come out.

Q. Would you tell me what that circumstantial evidence is, Mr. Kramer?

A. That they are colleagues, that they know each other and that there's a possibility of conspiracy here.

Q. But you have no direct evidence or knowledge that Dr. Schwartz actually knew that Larry Newman was on the board of the School Directors of the Neshaminy School District; do you?

A. No, but I would also state in a case like that that when—I would say that if that's true, that's extreme ignorance. That if I didn't know who my neighbor was and my friend was and what he did in general, I'd be pretty ignorant.

.    .    .    .    .

A. Now, you're asking me to believe that these people were so naive that they did not know each other existed and were—

Q. You have no evidence; do you?

A. Unbelievable.

.    .    .    .    .

Q. And you have no evidence, information or facts that Dr. Schwartz knew of Larry Newman's involvement in this case; do you?

A. The evidence is that they were colleagues and friends. It's pretty hard in a termination like this of an employee that's worked for twenty-five years, that they didn't know this. It's pretty hard—

Q. So this is your belief but you don't have facts, knowledge or information that Dr. Schwartz, in fact, knew—

A. I have hearsay.

Q. What hearsay do you have that Dr. Schwartz actually knew Larry Newman was involved in this case?

A. People told me that I got a raw deal.

(Kramer Deposition at DX Exhibit I, pages 69–70, 87–88).

 Kramer's own testimony does not establish that the arbitration proceedings were tainted. Further, his position is in no way helped by his assertion in his January 30, 1993 letter to the Court that he spoke to Rider College's Assistant Dean on February 8, 1991, and that she allegedly then said that Doctors Schwartz and Newman "get along well" and are "good friends." Such hearsay evidence, which is unsupported by an affidavit of the Assistant Dean, is not in conformity with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and amounts to a mere allegation upon which an adverse party may not properly rely. *See Adickes*, 398 U.S. at 159, 90 S.Ct. at 159; Fed.R.Civ.P. 56(e).[11] There are no genuine issues of material fact with respect to the claim of taint in the arbitration proceedings.

The Court will grant defendants' motion for summary judgment and deny plaintiff's motion for partial summary judgment.[12]

11. Rule 56(e) of the Federal Rules of Civil Procedure provides in full as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

12. On March 10, 1993 the parties filed a stipulation with the Clerk of Court wherein defendant school board members Carol Calvello and Diane Marseglia were dismissed from this action, with prejudice. Ms. Calvello and Ms. Marseglia,

therefore, are no longer part of defendants' mo-
tion for summary judgment.