Bernard **WALTIER**, Plaintiff,

v.

**NEW YORK POLICE DEPARTMENT,**
Defendant.

No. 93 Civ. 0985 (KMW).

United States District Court,
S.D. New York.

June 28, 1994.

Bernard Waltier, pro se.

Desiree Kim, Asst. Corp. Counsel, Paul A. Crotty, Corp. Counsel, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Presently before the court is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff, who is appearing *pro se,* has failed to state a claim on which relief can be granted. For the reasons stated below, the court hereby grants defendant's motion.

## BACKGROUND

Prior to August 1991 plaintiff Bernard Waltier was issued a target pistol permit and a restricted carry pistol permit pursuant to Article 400 of the New York State Penal Law. Apparently, possession of these permits enabled him to work as an armed guard. On August 23, 1991 plaintiff was working as an armed guard when he shot another individual, allegedly in order to save his own life. Complaint, paragraph 7. Plaintiff was arrested, tried and eventually acquitted in relation to the incident. He received a Certificate of Disposition on or about September 21, 1992. Complaint, paragraph 7. On October 23, 1992 the License Division of the defendant New York Police Department ("License Division") wrote plaintiff to inform him that pursuant to Title 38, Chapter 5, Section 5–22 of the Official Compilation of the Rules of the City of New York ("R.C.N.Y.") his pistol permits had been revoked based on the circumstances surrounding his arrest. The correspondence informed plaintiff that he had thirty days within which to request an administrative hearing on the matter. Response to Motion to Dismiss, Exhibit Z.

In New York City, the pistol permit revocation process works as follows. Under § 400.00(11) of the New York State Penal Law, the New York City licensing authority (i.e., defendant) may revoke or cancel a pistol permit at any time. N.Y.Penal Law § 400.-00(11) (McKinney 1994). Under 38 R.C.N.Y. § 5–30 (1991), a handgun license is subject to review and potential suspension or revocation whenever the licensee is arrested, summoned (except for traffic infractions), indicted, or convicted in any jurisdiction. All such incidents are reviewed and evaluated by License

Division investigators. *Id.* If a license is suspended or revoked, the licensee may request a hearing to appeal the decision within thirty days of receiving notice. *Id.* At such a hearing the licensee has a "right to call witnesses, conduct examinations and cross-examinations, to present evidence, and make objections, motions and arguments." 38 R.C.N.Y. § 15–25. The hearing officer's decision must be rendered in written form, including a statement of issues, findings of fact, conclusions of law, and the basis of the decision. 38 R.C.N.Y. § 15–28. The hearing officer's decision may be appealed in writing to the Commanding Officer of the License Division. 38 R.C.N.Y. § 15–30. The Commanding Officer's decision may in turn be appealed in the New York State courts. N.Y.Civ.Prac.L. & R. § 7801 et. seq. (McKinney 1981). Plaintiff chose to forego the established review process following notice of revocation of his pistol permits, choosing instead to bring this suit. Pending a decision on the present motion to dismiss, defendant agreed to hold in abeyance the hearing to review revocation of plaintiff's pistol permits.

Plaintiff brings this action *pro se* pursuant to 42 U.S.C. § 1983 and appears to make two claims challenging the foregoing pistol permit revocation procedures, pursuant to which he was deprived of his permits. First, he claims that the procedures provide for revocation without notice and a prior opportunity to be heard, in contravention of the due process clause of the Fourteenth Amendment. Second, he claims that a revocation hearing held to inquire into circumstances for which he was previously charged and acquitted would violate the double jeopardy clause of the Fifth Amendment. Plaintiff seeks damages for injuries suffered as a result of the revocation of his pistol permits, most importantly the loss of earnings,[1] damage to his reputation, and the cost of this lawsuit.

In response, defendant argues that plaintiff fails to state a valid claim on the following grounds: 1) plaintiff's complaint is not ripe because the administrative action that he

challenges is not final; 2) the post-deprivation hearing available to licensees whose pistol permits have been revoked or suspended satisfies procedural due process requirements; and 3) the double jeopardy doctrine does not apply to civil administrative matters such as the revocation of a pistol permit.

## DISCUSSION

 On a motion to dismiss, a district court must construe the complaint in favor of the pleader, and accept as true the factual allegations made in the complaint. *See La-Bounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991). The function of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). This principle is to be applied with particular care when the plaintiff is appearing *pro se.* The court is obliged to construe *pro se* complaints liberally. *La-Bounty,* 933 F.2d, at 122. Applying this standard of review, the court grants defendant's motion to dismiss for the reasons set forth below.

## I. PROCEDURAL DUE PROCESS

### A

As a threshold matter, the court must consider defendant's assertion that plaintiff's procedural due process claim is not ripe for adjudication because the deprivation is not final. Defendant argues that plaintiff cannot claim a deprivation of due process until he has availed himself of the post-deprivation hearing and obtained a final determination regarding his pistol permits.

 Notwithstanding its statements to the contrary, defendant's finality argument relates to administrative exhaustion rather than ripeness. The Supreme Court has explained the difference between these two concepts as follows:

---

1. Defendant presently works as a security guard, making $4.00 an hour less than he would otherwise make if he were in possession of his permits

and could work as an armed guard. Complaint, paragraph 8.

[ripeness] is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). In plaintiff's case, pursuit of a post-deprivation hearing would constitute exhaustion, since the initial decisionmaker has already arrived at a definitive position that injures plaintiff, i.e., plaintiff's pistol permits have been revoked without a predeprivation hearing; a subsequent hearing would be purely remedial. *See Weissman v. Fruchtman,* 700 F.Supp. 746, 755–56 (S.D.N.Y.1988) (rejecting argument that plaintiffs must appeal revocation decision for procedural due process claim to be ripe; "[s]ince plaintiffs challenge the constitutionality of the *appeal procedures themselves,* which allowed permits to be revoked without affording their owners prior notice or an opportunity to be heard, a BSA appeal would have had no effect on their procedural due process claim"). As defendant concedes, under section 1983, plaintiffs are not required to exhaust administrative remedies. *Williamson County Regional Planning Comm'n,* 473 U.S., at 192, 105 S.Ct., at 3119. Therefore, the court concludes that plaintiff need not pursue his post-deprivation hearing prior to challenging the permit revocation procedures in court.

## B

■ Under the Fourteenth Amendment, procedural due process is a flexible concept. In determining which procedures are constitutionally required in a particular situation, the Supreme Court has held that three factors must be balanced: 1) the nature of the private interest; 2) the risk of an erroneous deprivation of that interest, and the probable value of additional safeguards; and 3) the government's interest in taking its action, including the burdens that any additional procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

■ As applied by the Supreme Court, the *Mathews* test generally requires that state deprivation of property must " 'be preceded by notice and opportunity of a hearing appropriate to the nature of the case.' " *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). What constitutes a requisite "hearing" varies in different situations; a full evidentiary hearing is usually not required. *See id.,* at 545, 105 S.Ct., at 1495 ("In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."); *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1975) ("the nature of the hearing will depend on the appropriate accommodation of the competing interests involved").

■ Significantly, in certain instances, due process does not require any predeprivation hearing at all. Statutory provisions for a post-deprivation hearing may be constitutionally acceptable if the *Mathews* criteria weigh sufficiently in favor of government interests, as opposed to lesser individual interests. This is the case only in situations involving either the "necessity of quick action by the State or the impracticality of providing any predeprivation process." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (*quoting Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981)). For example, summary action without a predeprivation hearing has been upheld where necessary to protect the environment and public safety, *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 298–303, 101 S.Ct. 2352, 2369–2374, 69 L.Ed.2d 1 (1981); to maintain the integrity of horse racing and protect the public, *Barry v. Barchi* 443 U.S. 55, 64–65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979); and to avoid the importation of illegal guns, *Gun*

*South, Inc. v. Brady,* 877 F.2d 858, 867–68 (11th Cir.1989).

### C

■ The present case falls within the line of cases in which a predeprivation hearing is not required to satisfy due process. Applying the *Mathews* test below, the court finds that the defendant's interest in protecting the public from irresponsible and illegal handgun use clearly outweighs arrestees' interest in having a hearing prior to the revocation of their pistol permits. Moreover, the procedures do not present a significant risk of erroneous deprivation.

As one prong of the *Mathews* test, courts are to consider the government interest at stake. The court finds that defendant has a very strong interest in regulating the use of handguns. The threat to public safety posed by illegal and/or irresponsible hand-gun usage is well known. Countering this threat often requires quick state action. The New York City Rules provide for review of pistol permits held by those who might have been involved in illegal or other activities suggesting their unfitness to bear arms. The danger that such individuals present to public safety demands immediate state action. To hold predeprivation hearings in such cases could result in irreparable harm during the pendency of the hearing. Thus, the court finds a strong state interest in regulating pistol permits, which includes the ability to revoke such permits without a predeprivation hearing.

Turning to the individual interest at stake, here the court finds that an individual's interest in his pistol permit does not outweigh the strong governmental interest, particularly given the minimal danger of an erroneous permanent deprivation. As with the revocation of many kinds of licenses, revocation of pistol permits can cause economic harm. Nonetheless, courts considering the deprivation of similar license rights have concluded that the individual interest in a license is not so strong that it requires a predeprivation hearing in order to provide due process. *See, e.g., Gun South, Inc.,* 877 F.2d 858 (temporary suspension of permit to import assault rifles is reasonable). In this case, revocation of plaintiff's permits has deprived him of the capacity to earn an additional $4.00 per hour as an armed guard. While significant, plaintiff's loss does not constitute deprivation of a basic means of sustenance. *See, Mathews v. Eldridge,* 424 U.S., at 340–341, 96 S.Ct., at 905 (disability payments under the Social Security Act are non-subsistence payments; a post-deprivation hearing may satisfy due process requirements). In sum, the court concludes that plaintiff's economic loss is not sufficient to outweigh defendant's strong interest in revocation of pistol permits in instances of arrest.

As for the third prong of the *Mathews* test, the court finds that the post-deprivation procedures provided for under 38 R.C.N.Y. § 5–30 do not present a significant risk of erroneous deprivation of pistol permits. Licensees contesting revocation of their permits are given ample opportunity to be heard in a post-deprivation proceeding, to receive a reasoned decision on their case, and to appeal that decision. Moreover, the permissible grounds for revoking pistol permits under the Rules of the City of New York are sufficiently related to the protection of public safety and the general welfare. The rules contemplate that, as was the case here, an arrestee's pistol permit can be revoked notwithstanding a favorable termination of the criminal case against him. Solely for purposes of revocation pending an appeal, arrest for shooting another person is an acceptable indicator of behavior that poses a threat to public safety. *See Barry,* 443 U.S., at 66–67, 99 S.Ct., at 2650 ("Even if the State's presuspension procedures, then, were not adequate finally to resolve the issues fairly and accurately, they sufficed for the purposes of probable cause and interim suspension"). Post-deprivation proceedings can be relied upon to mitigate the occasional erroneous temporary deprivation.

In sum, the court concludes that the pistol permit revocation procedures at issue here do not violate the due process clause of the Fourteenth Amendment. This conclusion is based on the court's finding that the government interest in public safety outweighs the private interest in carrying pistols during revocation proceedings, and that the proce-

dures do not present a risk of permanent erroneous deprivation.

## II. DOUBLE JEOPARDY

■ The plaintiff's double jeopardy claim fails on the ground that the double jeopardy doctrine applies only to those proceedings that are essentially criminal, prohibiting a second prosecution after a first trial for the same offense. *See Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). Although the events that led to the revocation of plaintiff's pistol permits were also the subject of criminal charges of which he was acquitted, the revocation proceedings themselves do not constitute a criminal prosecution. Therefore, the revocation proceedings are not precluded by the double jeopardy clause.

## CONCLUSION

For the reasons stated herein, the plaintiff's complaint fails to state a claim. The Fourteenth Amendment does not require that plaintiff be granted a hearing prior to revocation or suspension of his pistol permits. Moreover, the revocation proceedings do not violate the double jeopardy clause. Plaintiff does not challenge the adequacy of the proceedings on any other ground, and I cannot find any fault with the post-deprivation proceedings available to him. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure is hereby granted. The clerk of the court is hereby directed to dismiss Plaintiff's claim with prejudice. On May 10, 1994, plaintiff filed a motion to compel defendant to produce witness and exhibit lists. Since the case is hereby dismissed, plaintiff's May 10 motion is hereby denied. Plaintiff is advised that in order to appeal this order, he must file a notice of appeal within 30 days of this decision.

SO ORDERED.