# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2950

_____

Mildred Clark,      *
     *
        Plaintiff/Appellee,      *
     *
    v.      *
     *
Kansas City Missouri School District,      *
     *      Appeal from the United States
        Defendant/Appellant,      *      District Court for the
     *      Western District of Missouri.
Linda Lollis; Benjamin Demps; Kansas      *
City Missouri School Board; Helen J.      *
Ragsdale; Lee Barnes, Jr.; Duane Kelly;      *
Harriett Ann Plowman; Patricia Kurtz;      *
Michelle S. Hensley; Albert Mauro, Sr.;      *
Elma Warrick; Fifi Wiedman,      *
     *
        Defendants.      *

_____

Submitted: March 10, 2004
Filed: July 13, 2004

_____

Before RILEY and MELLOY, Circuit Judges, and ERICKSON,[1] District Judge.

_____

RILEY, Circuit Judge.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

Mildred Clark (Clark), a teacher in the Kansas City, Missouri, School District (District), brought a section 1983 action against the District, alleging the District had deprived Clark of property without due process in violation of the Fourteenth Amendment. A jury returned a verdict in Clark's favor. The District subsequently moved for judgment as a matter of law and for a new trial. The district court denied the District's motions, entered judgment in Clark's favor, and awarded Clark attorney fees. The District appeals. Concluding the record does not support the District's employees deprived Clark of property by following an established procedure, and Missouri law provides Clark with the adequate postdeprivation remedy of replevin, we reverse the judgment, remand, and vacate the district court's attorney fees award.

## I.    BACKGROUND

The District employed Clark as a science teacher at Southeast Middle School (Southeast). Due to Southeast's reorganization, the District transferred Clark to J.A. Rogers Middle School (Rogers). After being transferred, Clark secured permission from Southeast's principal, Linda Lollis (Lollis), to remove her personal property from her former classroom. Unable to pack and retrieve all of her personal property due to high summer temperatures that day and the following day, Clark returned to Southeast on August 29, 1996, two days after initially securing permission from Lollis, to remove her personal property.

On August 29, Lollis escorted Clark to her former classroom. When Lollis began removing materials from the boxes Clark had packed, Clark left the classroom to call the District's superintendent. Unable to contact the District's superintendent, Clark discussed the situation with the District's attorney, who told Clark to have Lollis call him. Upon returning to the classroom, two security guards were present. Clark delivered the attorney's message and informed Lollis that Clark owned the materials in the boxes. At Lollis's request, a security guard removed Clark from the building.

After being escorted out of the building, Clark drove to the District superintendent's office. After discussing with Assistant Superintendent Dr. Ida Love (Dr. Love) what had occurred, Dr. Love returned to Southeast with Clark. Dr. Love and Clark sorted through the materials, and discussed who owned the various materials, with Clark showing Dr. Love "things that [Clark] knew did not belong to Southeast." Clark packed five boxes of materials into her vehicle, leaving other materials at Southeast. Later in the day, Clark received a call informing her that boxes with some of her materials were on the sidewalk outside Southeast. Clark called the police and asked the police to meet her at Southeast. Clark returned to Southeast, meeting the police she summoned. Notwithstanding that Clark recognized the materials in the boxes on the sidewalk as her personal property, Clark did not collect the boxes, because the police advised her not to touch the boxes. The boxes were subsequently delivered to Clark at Rogers. Clark believed Southeast still retained more of her materials.

Approximately one month later, Clark received an e-mail from Rogers's principal, Sally Newell (Newell). Newell's e-mail stated:

> I was notified today by Dr. Love that the materials that were being held from [Southeast] were going [to be] returned to the school at the end of the week unless some verification can be made as to ownership. . . . Verification needs to be in the form of the production of [a] receipt for any materials in question, or a statement from the company stating that they were compensation for work.

The e-mail required Clark to deliver the verification to Dr. Love in three days. Clark did not produce receipts or a statement from a company verifying her ownership. Instead, Clark informed Newell she would have difficulty producing such evidence. Clark did not request additional time to procure the necessary documents.

Clark also attempted to invoke the grievance procedure outlined in the District's employee handbook (Handbook). The Handbook outlines a five-step process to address an employee's grievance. To invoke the process, the employee must first orally present the grievance within three days to the employee's principal—in Clark's case, Newell. The principal must orally respond to the employee's oral grievance within three days. If the grievance is not resolved, the next step requires the employee to file a written grievance with the principal within three days of receiving the principal's oral decision. Upon receipt of the written grievance, the principal must hold a hearing within three days and issue a written decision within three days of the hearing. If the employee is not satisfied with the outcome, the employee may subsequently appeal the decision through the District's administrative structure (steps three through five), culminating with an appeal to the District's Board of Education.[2]

On the day of the August 29 incident, Clark discussed what had occurred at Southeast with Newell. Days later, Clark composed a letter to Newell describing the incident and requesting relief. After waiting to deliver the letter personally, Clark left it in a box in Newell's office. Clark never received a hearing or a decision from Newell.

---

[2]We need not discuss the remaining steps in the grievance process because the district court's instructions only allow us to infer that Clark filed a grievance with Newell. The district court instructed the jury that it must find in Clark's favor if: (1) Clark purchased materials for her classroom; (2) the District took the materials; (3) "[Clark] filed a grievance asking that the items be returned to her; and [(4) the District] failed to provide [Clark] with a hearing on said grievance." We infer from the jury's verdict that Clark filed a written grievance with the principal, and the principal did not provide her with a hearing. Drawing any further inferences would require us to speculate about the jury's assessment of Clark's credibility. Clark testified she attempted to invoke all five steps in the grievance process. Conversely, District witnesses testified no record exists indicating Clark filed a grievance.

On March 11, 2001, Clark sued the District, various District employees, and the District's Board of Education members,[3] alleging she had been deprived of personal property without due process in violation of the Fourteenth Amendment. After a trial on the merits, the jury returned a verdict in Clark's favor.

The District moved for post-verdict judgment as a matter of law and a new trial. The district court denied the District's motions, summarily dismissing the District's contentions. The district court entered judgment in Clark's favor and awarded Clark attorney fees. The District appeals, contending (1) the evidence was insufficient to support a denial of due process and the District is entitled to judgment as a matter of law on Clark's due process claim; (2) Clark's claim is barred by a prior state court lawsuit against Lollis; (3) the district court incorrectly instructed the jury; (4) the district court's questioning of witnesses and its statements during the trial unfairly prejudiced the District; and (5) the district court abused its discretion in awarding attorney fees. Because Clark's due process claim fails as a matter of law, we decline to address the remaining issues.

## II. DISCUSSION

### A. Due Process

"We review de novo the district court's denial of [a] post-verdict motion for judgment as a matter of law." Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 863 (8th Cir. 2004) (alteration in original; citation omitted). We must determine whether sufficient evidence exists to support the jury's verdict. Id. We examine "the evidence in the light most favorable to [Clark] and view all inferences in [her] favor." Id. "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining [Clark's] position." Id. "'A mere scintilla of evidence is inadequate to support a verdict,' and judgment as a matter of law is proper when the record contains no proof

---

[3]All other defendants except the District were dismissed by the last day of trial.

beyond speculation to support the verdict." Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc) (citation omitted).

To establish a violation of procedural due process, Clark must prove (1) the District deprived Clark of "life, liberty, or property"; and (2) the District deprived Clark of that "interest without sufficient 'process.'" Krentz v. Robertson Fire Prot. Dist., 228 F.3d 897, 902 (8th Cir. 2000). Because the District concedes, for the purposes of this appeal, the District deprived Clark of a property interest, we proceed to determine if the District afforded Clark sufficient process.

Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The fundamental requirement of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate "the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). See Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). This rule is premised on "the states' action . . . not [being] complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." Hudson, 468 U.S. at 533. However, when an established state procedure or a foreseeable consequence of such a procedure causes the loss, an adequate postdeprivation remedy is of no consequence, and we focus solely on the process afforded by the established procedure. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982); Putman v. Unknown Smith, 98 F.3d 1093, 1095-96 (8th Cir. 1996) (involving police and St. Louis County).

The unauthorized, random acts of the District's employees, not an established procedure, deprived Clark of property. Clark does not challenge the sufficiency of any process offered by any established District procedure, but challenges Lollis's, Dr. Love's, and Newell's acts depriving Clark of property. As presented by Clark, Lollis's acts were unauthorized and random. Lollis had Clark removed from Southeast, and attempted to prevent Clark from removing her materials from Southeast by sifting through the boxed materials and removing materials from the boxes. Clark presented no evidence Lollis acted pursuant to any established District procedure.

Dr. Love's acts were unauthorized and random. Dr. Love accompanied Clark back to Southeast after Lollis had Clark removed from Southeast. Dr. Love and Clark sorted through the materials in the classroom, apparently separating Clark's materials from District materials. A month later, Dr. Love afforded Clark the opportunity to establish ownership of the materials held at Southeast, but only provided Clark a two-day window in which to verify ownership. Clark produced no evidence Dr. Love followed an established District procedure in carrying out any of these challenged acts.

Newell's failure to adhere to the grievance procedure was an unauthorized, random act. Clark orally lodged and filed a grievance with Newell pursuant to the Handbook's grievance procedure. Newell never granted Clark a hearing as required by the Handbook, and never provided Clark with a written decision. Clark presented no evidence the District had an established procedure of not following the Handbook. Quite the opposite is apparent. The District adopted the grievance procedure anticipating the District's employees would adhere strictly to the outlined procedures. Newell's disregard for the policy clearly evidences her acts were unauthorized and random.

Having determined Lollis, Dr. Love, and Newell committed unauthorized and random acts, we next consider whether Missouri provides an adequate postdeprivation remedy. Missouri law provides Clark with the postdeprivation state law remedy of replevin. Mo. R. Civ. P. 99.01; see Allen v. City of Kinloch, 763 F.2d 335, 336-37 (8th Cir. 1985) (concluding Missouri replevin law was an adequate postdeprivation remedy to recover property, and explaining "where a random and unauthorized act by a state employee results in a tortious taking of private property, due process is satisfied if state tort law provides a meaningful post-deprivation remedy"). Missouri law recognizes replevin as a remedy for a person claiming to be the lawful owner of personal property held by another. Mo. R. Civ. P. 99.01. In a replevin action, the claimant may obtain immediate possession of the personal property upon filing an affidavit and a bond with the court. Mo. R. Civ. P. 99.03 & 99.06. Alternatively, a claimant may request in writing a "hearing [within ten days] to determine the [claimant's] right to possession of the property pending trial." Mo. R. Civ. P. 99.09. After a trial, if the court or jury determines the claimant is entitled to possession, the claimant can have the property returned or have the claim reduced to a monetary judgment. Mo. R. Civ. P. 99.12. Missouri law also allows the recovery of damages for injury, taking, or detention of the property. Id. "Although the state remedies may not provide [Clark] with all the relief which may have been available if [she] could have proceeded under § 1983, [such as recovery of attorney fees,] that does not mean that the state remedies are not adequate to satisfy the requirements of due process." Parratt, 451 U.S. at 544.

Because the unauthorized, random acts of Lollis, Dr. Love, and Newell deprived Clark of her materials and Missouri provides the adequate postdeprivation remedy of replevin, Clark's Fourteenth Amendment due process claim fails as a matter of law.

**B.     Attorney Fees**

A court may award the prevailing party attorney fees in a section 1983 action. 42 U.S.C. § 1988(b) (2000).  Because we reverse the district court's judgment in Clark's favor, Clark is no longer the prevailing party.  Therefore, we vacate the district court's attorney fees award.

## III.    CONCLUSION

For the foregoing reasons, we reverse the district court's judgment in Clark's favor, remand to the district court to enter judgment in the District's favor, and vacate the district court's attorney fees award.

——————————————————————