106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lucretia MIRON, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-4305.
 United States Court of Appeals, Sixth Circuit.
 Jan. 22, 1997.
 
 On Appeal from the Board of Immigration Appeals, No. Apq-ofc-axg.
 BIA
 REMANDED.
 Before: MARTIN, Chief Judge; KEITH and BATCHELDER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner, Lucretia Miron, seeks review of a decision of the Board of Immigration Appeals (the "BIA"), which denied her applications for asylum and withholding of deportation. The request is premised on several alleged errors, particularly the agency's failure to make definitive credibility findings in conjunction with its apparent rejection of Ms. Miron's testimony and evidence. Ms. Miron also filed with this Court an Application For Leave to Adduce Additional Evidence requesting that the Immigration and Naturalization Service (the "I.N.S.") reopen her case and consider additional evidence supporting her asylum application. For the reasons stated below, we decline to review the asylum decision at this time, and instead REMAND this case to the agency for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 Lucretia Miron is a Rumanian national who entered the United States in March, 1992, on a non-immigrant visitor visa. Ms. Miron failed to leave the United States upon the expiration of that visa, and has continued to live and work in the United States. In March, 1993, the I.N.S. issued an Order to Show Cause why Ms. Miron should not be deported. Ms. Miron admitted that she was deportable. However, in August, 1993, she applied for asylum, fearing continuing religious and political persecution if she were to return to Romania. In December, 1993, Ms. Miron's asylum application was denied due to the immigration judge's finding that she had failed to prove either past persecution or a well-founded fear of future persecution at the hearing on her application. Ms. Miron appealed to the BIA. The BIA affirmed the denial of Ms. Miron's request for asylum in November, 1995. In December, 1995, Ms. Miron filed the instant appeal.
 
 
 3
 On February 28, 1996, Ms. Miron filed an Application For Leave to Adduce Additional Evidence (the "Application"). The additional evidence Ms. Miron wishes to introduce are translated letters from Ms. Miron's children, neighbors and co-workers who remain in Romania.
 
 
 4
 Ms. Miron is a Baptist. She contends that because she has not embraced the Orthodox faith, the more prevalent religion in Romania, she has been a victim of persecution and abuse. Ms. Miron states that her husband brutally beat her for continuing to practice the Baptist faith. Over the many years of these beatings, Ms. Miron repeatedly called upon the local authorities for protection. They have consistently refused to intervene. Ms. Miron claims this refusal to act is a result of their disapproval of her religious beliefs. Ms. Miron fears the recurrence of these incidents if she returns to her homeland.
 
 
 5
 Ms. Miron also claims that she will be subject to political persecution in Romania. In 1987, during a Presidential visit to her city, she handed then-President Nicolae Ceaucescu a letter requesting better living conditions for herself and her children. As a result, Ms. Miron was arrested, questioned and beaten by the police. She fears that this arrest, and the fact that she subsequently left the country, will mark her as a political dissident subject to future persecution.
 
 
 6
 The letters attached to Ms. Miron's Application detail the continuing attacks, both psychological and physical, that have been made on her children due to their religion. The letters also indicate that Ms. Miron was fired from her job at the direction of government agents and that her family has been questioned and beaten by government officers seeking information about her. Ms. Miron's colleagues at work and her children's school administrators have been questioned about, and requested to denounce, Ms. Miron. The letters show that one subject of these inquiries is a notebook in which Ms. Miron detailed the political and economic situation in Romania, which appears to have been given to the police by her husband. Ms. Miron has requested that all of this additional evidence be added to the record in her case and that her asylum application be reevaluated based on the enhanced record.
 
 DISCUSSION
 
 7
 A. The Application for Leave to Adduce Additional Evidence
 
 
 8
 Sixth Circuit precedent regarding motions to reopen an agency decision made before a court reviewing that decision dictates that Ms. Miron's case be remanded for consideration of the additional evidence she seeks to produce. Title 28 U.S.C. § 2347(c) authorizes courts reviewing final agency orders to remand cases to the agency for consideration of additional evidence and issuance of a new order where they deem it appropriate. This Circuit has held, in Dolores v. I.N.S., 772 F.2d 223, 226 (6th Cir.1985) (per curiam ), that 28 U.S.C. § 2347(c) requires a petitioner seeking consideration of additional evidence to 1) move for leave to present new evidence, 2) demonstrate that the proposed new evidence is material, and 3) articulate reasonable grounds for failing to produce the evidence before the agency. Dolores specifically holds that this test is applicable to cases originating from I.N.S. proceedings. Id.[1]
 
 
 9
 On February 28, 1996, Ms. Miron filed with this Court an Application For Leave to Adduce Additional Evidence, in satisfaction of the first requirement of the Dolores test. The Application seeks leave to introduce into the record translations and original copies of letters that Ms. Miron has received from her family and from a variety of neighbors, school officials, and other acquaintances. The letters detail the fact that Ms. Miron's children have been taunted, pelted with stones, and have suffered other depredations at the hands of their schoolmates as a result of their Baptist beliefs. They also discuss various abuses visited on the Baptist church and its congregation.
 
 
 10
 In addition, the letters reveal that the government has questioned Ms. Miron's former co-workers, her children's school officials, and her family about her. Attempts have been made to elicit affidavits from those questioned denouncing Ms. Miron, or reporting her for various infractions. Another focus of questioning is a notebook recording Ms. Miron's observations about the political and economic situation in Romania, which her husband seems to have given to the police. The letters also show that several members of Ms. Miron's family were severly beaten during questioning. Lastly, one letter indicates that government officials had forced Ms. Miron's Rumanian employer to fire her. The incidents related in these letters go directly to the heart of Ms. Miron's claims of persecution in her home country. For that reason, these letters are material to her case and thus, satisfy the second requirement of the Dolores test.
 
 
 11
 Petitioner's Application states that she did not receive these letters until after her asylum hearing in December, 1993. The Application offers as a second reason for the delay the fact that Ms. Miron did not speak English well at the time of the agency hearing and did not have an understanding of the type of evidence that was potentially relevant to the deportation proceedings. Under the circumstances of this case, the fact that petitioner did not receive the letters until after the hearing before the agency, particularly when considered in conjunction with the facts that she did not have a good command of the English language, and was not consistently represented by counsel in the proceedings, appears to us to be reasonable grounds for her failure to present this evidence to the agency. Thus, the third requirement of Dolores is met. Allowing Ms. Miron to present all material evidence supporting her application for asylum before reaching a final decision on her case appears to be a matter of fundamental fairness. The minimum requirement for constitutional procedural due process has been defined by the Supreme Court as some form of meaningful or fair hearing Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148 (1982); Board of Regents v. Roth, 408 U.S. 564, 570-71 n. 8, 92 S.Ct. 2701, 2705 n. 8 (1972). Denying Ms. Miron the right to fully present a facially valid asylum claim, resulting in her immediate deportation, seems to deny her the meaningful consideration afforded her by law.
 
 
 12
 The requirements embodied in the Dolores test are sufficient to separate serious claims for reconsideration from frivolous or unsupported ones. As Ms. Miron's Application satisfies each element of the Dolores test, this Court will stay the order of deportation entered against her and remand her case to the I.N.S. for a de novo hearing and issuance of a new agency decision. Furthermore, the new agency decision should specifically address the credibility determinations made by the agency, an item that was lacking in the first decision in this case.
 
 
 13
 Having decided that the law of this Circuit and principles of fundamental fairness require that this case be remanded to the I.N.S. for a new hearing, this Court declines to consider at this time the issues raised by petitioner in appealing the original order of deportation. For the foregoing reasons, we stay the order of deportation entered against the petitioner, Ms. Lucretia Miron, and REMAND this case to the I.N.S. for a de novo hearing consistent with the dictates of this opinion.
 
 
 
 [1]
 The I.N.S. has argued that Delores should be overruled in light of the fact that the immigration laws have been modified by § 545 of the Immigration Act of 1990 in such a way that further application of § 2347(c) to immigration cases would defy Congress' express intent. However, it is clear to this Court that the very section to which the I.N.S. points for proof of this assertion belies this outrageous claim. That section specifically states that "the procedure proscribed by, and all the provisions of chapter 158 of title 28, United States Code, shall apply to, and shall be the sole and exclusive procedure for the judicial review of all final orders of deportation ..." Immigration and Nationality Act. 8 U.S.C. § 1105(a), as amended by § 545 of the Immigration Act of 1990 (emphasis added). Given that § 2347(c) is found in chapter 158 of title 28 of the United States Code, this Court has no doubts regarding the continuing applicability of § 2347(c) to immigration cases, nor regarding the continuing viability of this Court's decision in Delores