**13-243-cv**
*Mircea Rosu v. City of New York, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————

August Term, 2013

(Argued: December 12, 2013     Decided: February 7, 2014)

Docket No. 13-243-cv

————

MIRCEA ROSU,

*Plaintiff-Appellant*,

-v.-

THE CITY OF NEW YORK, NEW YORK CITY COMMISSION ON HUMAN RIGHTS, PATRICIA GATLING in her individual capacity, and CARLOS VELEZ, in his individual capacity,

*Defendants-Appellees*.

————

Before:
POOLER, PARKER, AND WESLEY, *Circuit Judges*.

————

Plaintiff-Appellant Mircea Rosu appeals from a Memorandum and Order of the United States District Court for the Southern District of New York (Batts, *J.*), granting defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rosu challenges the New York City Commission on Human Rights' procedures, which

he contends do not provide due process.  For the reasons stated below, we find this argument unavailing and AFFIRM the district court's decision dismissing Rosu's complaint in its entirety.

---

DEREK T. SMITH, Derek Smith Law Group, PLLC, New York, NY, *for Plaintiff-Appellant.*

ELLEN RAVITCH, (Pamela Seider Dolgow, Amy N. Okereke, *on the brief)*, *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY,  *for Defendants-Appellees.*

---

PER CURIAM:

Plaintiff-Appellant Mircea Rosu appeals the Memorandum and Order of the United States District Court for the Southern District of New York, (Batts, *J.*), which dismissed his complaint for failure to state a claim.  Rosu argues that the procedures employed by the New York City Commission on Human Rights ("the Commission") in investigating, evaluating, and resolving his claim of discrimination violated due process.  As the Defendants did not have a duty to perform any activity that they allegedly failed to perform, we agree with the district court that not performing such actions was not a violation of the process to which Plaintiff was entitled.  We also find unconvincing Rosu's argument that the Commission's procedures facially violate due

2

process. We therefore AFFIRM the decision of the district court to dismiss Rosu's complaint.

## Background

Rosu's story begins with the Commission where Rosu filed an administrative complaint on April 20, 2005. His administrative complaint alleged that sometime in 2003, Scientific Components Corporation ("Scientific" doing business as Mini-Circuits) employees harassed him using ethnic slurs, excluded him from meetings, assigned him duties that were normally performed by less-qualified employees, denied him promotions to management positions, and otherwise fostered a hostile work environment. He further alleged that the primary motivation for the discriminatory behavior was his Romanian and Christian background, and asserted that "[t]he employees[] who harassed [him] and created a hostile work environment were from countries of [the] former Soviet Union and Jewish background." Most significant for Rosu, however, were a number of comments allegedly made by Scientific manager Aaron Raklyar wherein Raklyar specifically told Rosu that Jews were superior to Romanians.

Rosu further alleged in his administrative complaint that his medical condition was illegally used as a basis for his termination. In October 2004, Rosu suffered a stroke and was diagnosed as suffering from Parkinson's disease. Approximately one month

3

later, he was terminated from Scientific after giving Scientific a doctor's note indicating that he had suffered a stroke.  Rosu filed his administrative complaint with the Commission, in which he set out his allegations and claimed that Scientific employees, including Raklyar, unlawfully discriminated against him in violation of Title 8 of the Administrative Code of the City of New York.  *See* N.Y.C. Admin. Code §§ 8-101–31.

The Commission's process begins when a complainant files a verified complaint. *Id.* § 8-109(a).  The Commission is responsible for serving the complaint on the respondent and all necessary parties.  *Id.* § 8-109(d).  If the Commission believes that the circumstances so warrant, it may attempt to resolve the issues raised in the complaint through mediation.  *Id.* § 8-115(a).  If mediation is unsuccessful, the case is given to investigators who may interview witnesses and review documents to determine if there is probable cause for the complaint.  *Id.* § 8-114; *see also id.* § 8-109(g).  Following a finding of no probable cause, the case is dismissed and the complainant may appeal to the Commission. *See id.* § 8-113(d), (f).  If probable cause is found, the case is assigned to an attorney for prosecution and a hearing.  *Id.* § 8-119.  An administrative law judge holds a pre-trial conference.  *Id.* § 8-119(a).  If the case does not settle, the administrative law judge conducts a hearing and issues a recommendation, upon which the Commission bases its issuance of a final decision and order.  *Id.* § 8-120. Complainants

4

whose cases are dismissed, or found not to have probable cause, by the Commission

may seek judicial review in the New York Supreme Court. *Id.* § 8-123.

Rosu's administrative complaint was initially assigned to Commission

investigators Garfield Willis and Paul McCulloch. In this case, Rosu alleges that Willis

and McCulloch failed to conducted any witness interviews or request documents from

Scientific. In August 2007, the administrative complaint was re-assigned to

Commission investigators, defendant Carlos Velez and Mark Wilson. According to

Rosu, Velez and Wilson also failed to research his claim. When the Commission

dismissed Rosu's administrative complaint for lack of probable cause, Rosu requested

that the Commission further review his administrative complaint. Nonetheless, the

Commission affirmed its prior determination. Rosu alleges that, at some point, he

brought an Article 78 proceeding based on the Commission's dismissal of his

complaint. The Article 78 proceeding, however, was discontinued due to "a technical

defect in the papers."[1]

Rosu then turned to federal court by filing the instant complaint which alleges a

single cause of action, pursuant to 42 U.S.C. § 1983, that the Commission's procedures

---

[1]The record before us has no indication of why the state court proceeding was discontinued. The only mention of that proceeding appears in Rosu's complaint in this action. "Plaintiff had previously brought an Article 78 proceeding based on the determination of the Defendants. However, due to a technical defect in the papers the Article 78 Proceeding was discontinued." Compl. ¶ 69.

for investigating and processing administrative complaints of discrimination violate the Fourteenth Amendment's requirement of due process. Specifically, he claims that the Commission's procedures permit a reviewer to dismiss an administrative complaint for insufficient information or investigation in the absence of a hearing and without allowing complainant to cross-examine witnesses or have access to the investigative file. He argues the "procedures fail to provide sufficient process to protect complainants' rights in their [property interest to have their discrimination charges heard]."

His case was heard in the Southern District of New York by Judge Deborah Batts. In response to the complaint, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6). Judge Batts dismissed the complaint in its entirety and with prejudice in a Memorandum and Order dated and filed December 13, 2012. This appeal followed.

### Discussion

A Fourteenth Amendment due process claim entails a two-part inquiry to first "determine whether [plaintiff] was deprived of a protected interest," and, if so, "what process was his due."[2] *Logan v. Zimmerman Brush, Co.*, 455 U.S. 422, 428 (1982). When, as here, a state gives additional or alternative procedural forums for a cause of action, there is no constitutionally protected property interest in the forum itself. However, the cause of action itself constitutes a cognizable property interest. *See N.Y. State Nat'l Org.*

---

[2]The standard of review is neither contested nor determinative in this matter.

6

*for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001). Thus, Rosu's "discrimination claim," which alleges unlawful discriminatory practices under New York City Human Rights Law satisfies the first part of this two-part inquiry. The next question, then, is whether the City provided Rosu the process he was due.

To answer this question, we turn to the following factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged governmental course of action and the probable value of providing additional procedural safeguards, and (3) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Though Rosu's arguments to the Court slide enigmatically back and forth between alleging a facial and an as-applied violation of due process, the question before us is refreshingly narrow: does the Commission on Human Rights' procedures facially satisfy the due process requirements outlined in the seminal holding in *Mathews v. Eldridge*? We find that they do.

Rosu first alleges that the lack of a hearing *before* the determination of probable cause did not provide sufficient process. We disagree with Rosu, as the lack of a hearing before a deprivation--here, the dismissal of Rosu's complaint--will not violate due process if there is sufficient process *after* the deprivation. *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009). "'[T]he impracticality of providing any meaningful pre[-]deprivation process, when coupled with the availability of some

7

meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.'" *Id.* *(*quoting *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999)).

Since the Commission does provide a review process following a deprivation, is this process adequate? Notably, this Court has already concluded that the procedures of the New York State Division of Human Rights ("SDHR") were sufficiently fair such that an SDHR decision could have *res judicata* effect in a federal case. *See Mitchell v. Nat'l Broad. Co.*, 553 F.2d 266, 271 (2d Cir. 1977). *Mitchell* focused on the SDHR's dismissal on the grounds of "no probable cause." *Id.* We held the SDHR process gave complainants sufficiently fair opportunity to fully litigate their claims through the SDHR process. *Id*. The Supreme Court reviewed the same SDHR process in *Kremer v. Chemical Construction Corporation*, and had "no hesitation in concluding that [the SDHR] panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause." 456 U.S. 461, 484 (1982).

*Kremer* and *Mitchell* provide guidance, but are not controlling as the Commission's procedures are not perfectly interchangeable with those of the SDHR. In the course of receiving a complaint, the SDHR Regional Office will serve respondents, make sure the SDHR has jurisdiction, and if so, begin investigation. N.Y. Exec. Law § 297(2)(a). Through this investigation, the SDHR determines whether or not there is

8

probable cause to believe that an act of discrimination has occurred. *Id.* Before the SDHR issues a probable cause determination, the claimant is entitled to a "full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony." *State Div. of Human Rights On Complaint of Speller v. N.Y. State Drug Abuse Control Comm'n*, 59 A.D.2d 332, 336 (N.Y. App. Div. 1977). Critically, no comparable informal on-the-record presentation is available in the Commission's procedures. Like the Commission process, however, the SDHR allows for a final order of no probable cause or lack of jurisdiction to be appealed to the New York State Supreme Court. N.Y. Exec. Law § 297(4)(a). Similarly, a finding of probable cause and appropriate jurisdiction will lead to a public hearing, in which the agency or outside counsel will argue the case before an administrative law judge. *Id.*

Notwithstanding these differences, we conclude that the Commission's procedures provide sufficient process. Rosu's private interest in his administrative employment discrimination claim is substantial. *See Logan*, 455 U.S. at 434 (a discharged employee's "interests in retaining his employment[] . . . and – more intangibly – in redressing an instance of alleged discrimination, are [] substantial").

9

With regard to the risk of an erroneous deprivation under the procedures used by the Commission when measured against the value of an additional or alternative procedure, Rosu does not argue that the Commission's procedure lacked sufficient notice, but rather that he was not given sufficient opportunity to be heard or examine witnesses. A pre-deprivation hearing may be denied to a complainant under the Commission's procedure when the complaint lacks probable cause, that is, where the complainant fails to show that his or her complaint has merit, as a matter of law. N.Y.C. Admin. Code § 8-113(a)(5); N.Y.C. Rules, tit. 47 § 1-22(a)(5). Before that determination of no probable cause may be reached, the Commission's statute requires a full investigation. N.Y.C. Admin. Code § 8-109(g). If the investigation determines that the complaint lacks probable cause, the complainant can request review of that decision from the Commission directly. *Id.* § 8-113(f). Finally, if the Commission affirms the finding of the investigators, the complainant may seek judicial review in a New York court. *Id.* § 8-123. Additionally, as previously stated, a complainant, especially in an administrative proceeding, does not have an absolute right to a hearing, or full adversarial process before a denial of a claim. *See Kremer*, 456 U.S. at 485; *Barry v. Barchi*, 443 U.S. 55, 64-5 (1979); *Mathews*, 424 U.S. at 340. Though any additional step in the procedures might *theoretically* make a mistake less like likely, it is not clear that new procedures, as suggested by Rosu, would *necessarily* make this less likely.

10

Finally, common sense dictates that the addition of an extra hearing, allowing the complainant to present his or her case on the record, prior to an initial probable cause assessment, would undoubtedly tax the resources of the Commission. Additional personnel would be needed to conduct the hearing and new procedures for reviewing the record presented. This would not only be costly, it would slow the processing of complaints in the Commission, perhaps depriving others of their timely process.

Accordingly, the Commission's process which includes administrative and judicial review, satisfies due process. As nothing in Rosu's complaint makes out facts sufficient to allege a claim that the Commission's procedures as-applied to him deprived him of due process, the claim of whether there was violation due process as-applied was properly dismissed.

## Conclusion

We hold that the procedures of the New York City Commission on Human Rights satisfy due process. Accordingly, for the reasons stated above, the decision of the district court dismissing this proceeding is **AFFIRMED**.

11